[L. A. Nos. 11297 and 11311. In Bank.—May 29, 1930.]

In the Matter of HOWELL W. RICHARDSON and BEN-JAMIN ELCONIN for Review of Disbarment Proceedings.

Jerry Geisler, Vincent Morgan, Cromwell Ormsby and Gus. P. Higgins for Petitioner Richardson.

Kirkland I. Perky, Richard Kittrelle and George D. Higgins for Petitioner Elconin.

Nathan Newby, J. Perry Wood, Wm. J. Clark, Jerold E. Weil and Frank W. Stafford for The State Bar.

WASTE, C. J.—Applications have been made to this court by Howell W. Richardson and Benjamin Elconin, attorneys at law, for a review of the action of the Board of Governors of The State Bar of California recommending their disbarment, following an investigation and report by Local Administrative Committee No. 6 of Los Angeles County. The two attorneys were involved in the same transactions out of which the disbarment proceedings arose, and the legal questions raised by each are exactly the same. Therefore, the applications will be considered as one proceeding.

On October 21, 1925, Lewis H. Allen was arrested in Los Angeles County and charged with a serious offense, to wit, a violation of section 288 of the Penal Code. Allen employed applicant Benjamin Elconin to represent him at the preliminary examination in the Justice's Court and paid him between $300 and $400 for such service. Allen was held to answer before the Superior Court and his bail fixed at $5,000. He received $6,000 by a telegraphic order, which he indorsed and turned over to Elconin, who secured the money, deposited $5,000 of it as the bail and turned over the balance of $1,000 to Allen. Subsequently, Allen

made a written assignment to Elconin of all his interest in and to the $5,000 deposited as bail, which assignment stated, in substance, that it was made in payment of Elconin's fees for his services in defending Allen, and the payment of any other attorney Elconin might associate with him to represent Allen. Elconin thereupon employed petitioner Howell W. Richardson, who had but recently resigned from the district attorney's office, as associate counsel, and promised to pay him a $2,500 fee, which Richardson fixed for his services. When Allen's arraignment in the Superior Court came on, the people were represented by Forrest F. Murray and David Clark, deputy district attorneys, and the defendant by Elconin and Richardson, although Richardson had not been formally associated of record in the case. After some delay, to which Deputy District Attorney Murray consented, and statements to the court by Allen's counsel that Elconin had not been able to get in touch with Allen, and that there were some rumors that Allen had committed suicide, Richardson appeared in court and stated that Allen had not been located, and asked that the cause be put off the calendar and a bench wararnt issued for Allen. The deputy district attorney (Murray) consenting, the court ordered a bench warrant to issue, and fixed bail thereon at $10,000.

About six months after the issuance of the bench warrant, Allen not having been apprehended, Richardson inquired of Murray what disposition he proposed to make of the Allen case, and Murray stated, in substance, that he did not know —it would depend upon the wishes of the parents of the children involved in the accusation against Allen. Thereafter, Richardson met George F. Ryan, an investigator in the district attorney's office, who was on friendly terms with the parents of the boys involved, and requested Ryan to find out what the parents desired to have done. Ryan had Richardson's stenographer typewrite two letters, addressed to the district attorney, the wording of which, according to the testimony of Assistant District Attorney Tracy Chatfield Becker before the Local Administrative Committee, was substantially in the form of letters used for many years in the district attorney's office in such cases, where, for good reasons, prosecution was to be dropped. These letters were signed by the parents. Ryan had mis-

represented to the parents that Allen was dead; otherwise, they testified, they would not have signed the letters, in which they acquiesced in the dismissal of the case. Ryan also misrepresented to Murray that Allen was incarcerated in jail in Illinois, that the parents did not want to prosecute the case, that they did not want their children to testify and that the case could not be successfully prosecuted. Murray repeated these statements to Hon. Harry A. Hollzer, in whose department of the court the cause was pending, and in open court thereafter asked for a dismissal of the case, which the court ordered. Murray testified before the committee that, in making the representations to the court, he relied entirely upon Ryan's statements to him, and could not say that Richardson was present. Elconin became aware of the dismissal of the case on the day it was ordered, and immediately withdrew the $5,000 cash bail and paid Richardson his fee of $2,500.

About a year and a half after the dismissal an investigation of the matter was made by the county auditor, who claimed the county had been defrauded of the sum of $5,000 by the dismissal. Ryan made an affidavit, in which he stated he had been paid $500 by Richardson for assisting him in the Allen case. A motion to set aside and vacate the order dismissing the Allen case and exonerating the bail was made on the ground that the order had been procured by fraud practiced upon the court. Notice of the motion was served on Elconin and Richardson. They made no effort to deny or disprove the charges on which the motion was based, but appeared specially and objected to the hearing upon the merits on the ground that the court had no jurisdiction by reason of failure to give notice to the defendant Allen or to anyone authorized to represent him; their contention being that the dismissal of the action had terminated their employment as attorneys for Allen. However, prior to the hearing of the motion they paid into court $5,000, and stipulated that the same should be disposed of in such manner as the court should deem proper under the circumstances. The $5,000 was thereafter declared forfeited as bail money and was turned over to the county of Los Angeles. Ryan subsequently repudiated the affidavit, alleged to have been made by him, as containing statements he did not remember making, and as having

been obtained when he was under the influence of liquor. He denied receiving any money from Richardson in the Allen case. A grand jury investigation followed the publicity given the affair by the auditor. Other than admitting the division of the $5,000 between them, Richardson and Elconin refused to testify before it. An investigation into the matter was launched by the Los Angeles Bar Association, which was dismissed. All of these matters were read into the record in this proceeding. Ryan was not called as a witness.

On June 11, 1928, Local Administrative Committee No. 6, of the Bar of Los Angeles County, gave notice, in the form of an order to show cause, to Elconin, Richardson and Murray, that it would, at a time and place designated, proceed with the investigation of certain acts on the part of the three as attorneys at law and members of The State Bar of California, which acts were charged to be misconduct in violation of their oaths and duties as attorneys, to involve moral turpitude, dishonesty and corruption committed by them in making, and causing to be made, conspiring for, and conniving in the making of, false representations to the Superior Court, for the purpose of wrongfully procuring the dismissal of the Allen case, for the purpose of securing the exoneration of the bail in the case, and of receiving and appropriating the $5,000 cash bail deposited in the case; and in wrongfully procuring the dismissal of the case, securing the exoneration of bail, and in wrongfully receiving, securing and appropriating, and causing to be appropriated, said sum of $5,000; and in wrongfully conspiring to procure, and in wrongfully conniving at the procurement of, the dismissal of the case, and actually procuring the exoneration of the bail, and receiving, securing and appropriating the $5,000. Hearings were begun and continued, the testimony and proceedings making a voluminous record. On September 28, 1928, the committee filed its findings and recommendations with the Board of Governors. It recommended that Elconin and Richardson be disbarred, and that the charges against Murray be dismissed. A further hearing was asked for and was had before the Board of Bar Governors. The matter was referred to one of the governors for report and recommendation, and on November 22, 1928, the Board of Governors adopted the findings

of the Local Administrative Committee, and recommended that Benjamin V. Elconin and Howell W. Richardson be disbarred. The record of said Board of Governors in the matter was filed in the Supreme Court, and Elconin and Richardson filed their separate applications for a review of the proceedings.

Substantially, the two applications present the same legal questions: (1) As to the retroactive jurisdiction of the Board of Governors; (2) the constitutionality of the State Bar Act; (3) that if said act be unconstitutional, this court may not take action predicated upon evidence elicited before Local Administrative Committee No. 6 of Los Angeles County; (4) as to whether legal rules of evidence control such an investigation. These questions are practically all moot, by reason of recent decisions of this court. (*State Bar* v. *Superior Court,* 207 Cal. 323 [278 Pac. 432]; *In re Cate,* 207 Cal. 443 [279 Pac. 131]; *Matter of Shattuck,* 208 Cal. 6 [279 Pac. 998].) The last two points deal with the evidence in its application to the individual applicants, and this review of the lengthy record must be undertaken with a view to ascertaining if there be substantial evidence to support the findings. As the proceedings here were instituted before the court had decided a number of questions involved in the construction of the State Bar Act (Stats. 1927, p. 38), the Local Committee proceeded on the theory that it was conducting an "administrative proceeding in which some of the rules of evidence are customarily observed," but not in the strict sense as understood by lawyers. The volume of testimony taken is beyond all reason and apparent necessity, and suggests, at the outset, the pertinent query whether it was at all possible that a fair conclusion could be reached uninfluenced by extraneous and other disturbing considerations prejudicial to the applicants as the result of the creation of an atmosphere of public clamor, political intrigue and general corruption and dishonesty claimed to exist in the administration of criminal affairs in Los Angeles County. Much of the evidence which no doubt contributed to the "atmosphere" was only remotely relevant to the issue before the committee. Much of it was hearsay, and otherwise incompetent as to the attorneys involved. Because the members of the committee

confessed themselves perplexed as to the admission and rejection of evidence offered for their consideration, they concluded to receive all evidence offered, "giving consideration to the circumstances," as stated by it, "that if we should err by excluding evidence which should have been admitted, there would be no opportunity to cure that error; and on the other hand if we would err by admitting evidence which should be excluded, that may be cured by action of either the Board of Governors or the bar association or the Supreme Court on review." Accordingly, a great mass of evidence found its way into the record. Many motions to strike were interposed, but rulings were reserved and not made until the end of the proceeding, when much evidence and many of the exhibits were ordered stricken out. We have the statement in the brief of counsel for The State Bar that the committee "itself struck out the hearsay evidence before reaching its conclusions, and neither hearsay evidence nor findings based upon it were before the Board of Governors." An examination of the citation of evidence which the record shows was stricken out and not considered, as is made to appear in the supplemental brief of The State Bar, seems to support the assertion that hearsay and irrelevant evidence was not considered.

We have carefully considered the entire record, and are entirely satisfied that after the elimination therefrom of all hearsay evidence, which was stricken out by the Local Administrative Committee, there was remaining sufficient competent evidence before said committee to support and justify the findings of the committee on which the recommendation of disbarment is based. Not only so, but after weighing the whole evidence, including that in favor of the accused as well as that adverse to them, we are further of the opinion that the preponderance of this evidence as a whole is against the accused and in support of the findings of said Local Committee.

We cannot approve of the course followed in this proceeding of admitting evidence without the application of those established rules governing such matters, and with which courts and lawyers are, of course, familiar. While the Board of Bar Governors has not been invested with judicial power (*In re Shattuck, supra*), the investigation it is authorized by the State Bar Act to make in disciplinary

matters is ancillary to, and is a most important adjunct of the judicial review by this court of the decisions of the board. This review we have construed to be a re-examination by this court of the entire record of the proceedings before the Board of Governors, as these are required to be kept, and in due course transmitted to this court under the provisions of section 26 of the State Bar Act. Legal evidence alone should be required to deprive a duly admitted attorney of the vitally important and valuable right to practice his profession, and to impose upon him the stigma of disbarment. The court can be asked in such review only to consider the sufficiency of legal evidence. We are of the view, therefore, that only legal evidence, as that term is understood among lawyers, should receive the consideration of the Board of Governors and committees of The State Bar in the exercise of the disciplinary features of the Bar Act.

The general findings adopted by the Board of Governors in this cause are based upon specific overt acts found in the other findings, and are to the effect that Elconin and Richardson entered into a conspiracy to and did "wrongfully, fraudulently and unlawfully procure the dismissal" of a criminal action, "and the exoneration of the cash bail deposited" by Allen, for the purpose of depriving the people of the county of Los Angeles of said bail, and with the intent to wrongfully convert "said bail money" to their own use and benefit; that said "Richardson and Elconin unlawfully conspired together to pervert and obstruct justice and due administration of the law by procuring the improper dismissal" of a criminal action "and the exoneration of the cash bail" and "the appropriation and conversion of said bail to their own use"; by said Richardson falsely representing or causing to be represented to said Forrest Murray that the defendant Allen was in a penitentiary in Illinois; that said Richardson and Elconin were guilty of deceit and collusion in doing these things.

Eliminating the hearsay and otherwise irrelevant and incompetent testimony, as it is contended by the bar that the governors did, and as we have endeavored to do and feel we have done, there still remains in the record much direct and circumstantial evidence from which the conviction irresistibly arises that the applicants conceived the idea

of securing, in an easy manner, and appropriating to their own use, the $5,000 bail deposited in the Superior Court for the appearance of the defendant Allen in the criminal cause. It seems to be clearly established that the conduct of Elconin and Richardson in the matter of procuring the attendance of their client in the Superior Court was not what it should have been. They followed out a consistent plan of silence and misrepresentation, while, at the same time, they were making a pretense of desiring to procure the attendance of Allen through the instrumentality of a bench warrant. The record is replete with the testimony of circumstances from which the committee and the Board of Governors have drawn, and this court may well reach the conclusion that the incident relating to the issuance of the bench warrant was but a camouflage, intended to conceal the real desires of Allen's attorneys.

Laying aside much of the evidence tending to establish certain of the "overt acts" on which the general findings of the committee were rested, and which "overt acts" the applicants contend were not proven, there still remains sufficient to support the conclusion of the committee, which was accepted by the Board of Governors of The State Bar in recommending the disbarment of the applicants. It would serve no useful purpose for us to endeavor to review, in detail or in substance, the 1700 pages of record and testimony. The minds of the Administrative Committee and of the Governors of The State Bar differed from the minds of the applicants and their counsel as to the construction to be given to the evidence. The construction we place upon the testimony will, of course, be challenged by the applicants and their counsel. The nature of the testimony is, in large part, such that plausible explanations can be offered to refute the charges made against the attorneys. The general charge, that the applicants conspired to make false representations to the Superior Court and that they made or caused to be made such misrepresentations for the purpose of carrying out their scheme for obtaining and appropriating the $5,000 bail posted by Allen, finds substantial support in the record, which points irresistibly to the conclusion that the attorneys involved disclosed such a lack of integrity and fair dealing with the court as to render them

unfit to be attorneys at law. As part of the scheme to secure and appropriate the amount of the bail money, it was necessary to procure a dismissal of the charge against Allen and the exoneration of the bail; and the order of the court to that effect was procured through the connivance of the attorneys with a representative of the district attorney's office who, in turn, led the deputy district attorney in charge of the cause to make false representations to the court. It serves no purpose to the petitioners here for each of them to disclaim connection with the entire scheme because, at different times, one or the other of them does not appear on the face of the record to have been associated with any particular incident. We are concerned, as were the representatives of The State Bar, with the transaction in its entirety, and we cannot escape the conviction that, so viewed, the evidence warrants the sustaining of the recommendation of that body. The special Local Administrative Committee of the bar, and the examiners who conducted the hearing before it, were composed of men eminent in their profession. The hearing was exhaustive and painstaking, and the record gives indication that the accused attorneys were given every possible opportunity to refute the charges made against them before The State Bar. The rulings on the admissibility of evidence were, as has already been pointed out, extremely favorable to the accused. There is not the slightest evidence in the record that animosity or prejudice on the part of the committee or the examiners entered into the hearing, or that general conditions surrounding the conduct of criminal cases in the Los Angeles courts influenced the result. From every consideration, the hearing appears to have been fair and impartial, and in our opinion no showing has been made which would justify us in holding that the recommendation of the committee is either erroneous or unlawful.

The applications of the petitioners for an order dismissing the proceedings against them, and setting aside the recommendation of disbarment are denied. It is therefore ordered that the petitioners, Howell W. Richardson and Benjamin Elconin, be and they each are disbarred from the further practice of law in this state as an attorney and counselor, and that each of their names be and is hereby

502

ordered stricken from the roll of attorneys and counselors at law of the state of California.

Curtis, J., Preston, J., Shenk, J., Seawell, J., and Richards, J., concurred.

Rehearing denied.