22 So.2d 552

In re REED.

No. 37041.

April 30, 1945.

Charles A. McCoy, of Lake Charles, Hollingsworth B. Barret, of Shreveport, Frank Wm. Hart, of New Orleans, Guy V. Rich, of Bogalusa, Carroll Buck, of Amite, and Benjamin Y. Wolf, of New Orleans, for Supreme Court Committee on Professional Ethics and Grievances.

J. L. Warren Woodville and Walter B. Hamlin, both of New Orleans, for Alphonse H. Reed, exceptor.

HAMITER, Justice.

Invoking the original jurisdiction of this court, the Louisiana State Bar Association, through the Committee on Professional

Ethics and Grievances, filed a petition charging generally that Alphonse H. Reed, a resident of New Orleans and a member of the Bar of Louisiana, has "demeaned himself in a manner inconsistent and at variance with the oath subscribed by him as an attorney-at-law, and has disregarded the ethics, duties and obligations as a lawyer which he assumed as a member of the Bar by reason whereof he should be disbarred from the further practice of his profession in the State of Louisiana."

Specifically, the Committee charged:

"That the said Alphonse H. Reed, unlawfully and in collusion with principals and J. Claude Meraux, former Judge of the Twenty-fifth Judicial District Court for St. Bernard and Plaquemines Parishes, had illegal divorces rendered in eight cases where neither plaintiffs nor defendants were residents of St. Bernard Parish in which acts of collusion are shown, as shown by the pleadings and notes of evidence in said cases, wherein there was no jurisdiction either of the parties or of the subject matter of said suits, as will appear from the cases hereinafter cited.

"That in many such cases where the alleged cause was adultery, services were accepted and citations waived by the defendants, such acceptances of service by the defendants at times being made and noted on the petitions several days before filing; that in other cases the defendants signed and made affidavits to the answers and collusively admitted allegations of adultery, and in many such cases the affidavits to the answers were made before the filing of said suits. In many cases the notices of trial were prepared by the attorneys for the plaintiffs and service thereof accepted by the defendant and filed as a prelude to a quick rendition of judgment by the said Judge of said Court, in collusion with said defendant herein and the said parties thereto."

Respondent excepted to the petition as disclosing no cause of action. The exception was considered by us on a previous hearing and overruled. In Re Reed, 203 La. 1008, 14 So.2d 818.

After respondent had answered, denying the charges urged by the Committee, Honorable Oliver P. Carriere, an attorney-at-law of the New Orleans Bar, was appointed Commissioner to receive the evidence in the matter and to report to the court his findings of fact and conclusions of law.

In due course, following his holding of a hearing on the charges, the Commissioner presented his written report. He found to be groundless the accusation that collusion existed between respondent Reed and the former Judge J. Claude Meraux, no proof to sustain it having been offered. Also, he concluded that the allegation relative to a lack of the district court's jurisdiction in the divorce suits was without merit, he observing that "the records of the various cases filed in this disbarment proceeding show that in all eight cases the Twenty-fifth Judicial District Court had jurisdiction of the parties and of the subject matter." Furthermore, it was the finding of the Commissioner that the evidence does not disclose collusion in the divorce cases, between Reed and the parties to the suits, for

the purpose of quick rendition of judgments.

But the Commissioner entertained the belief, based on the evidence adduced, that the method employed by respondent in obtaining the divorces was improper in certain respects and constituted professional misconduct. For this reason he recommended that Reed be suspended from the practice of law for the period of one month.

Both the Committee and the respondent filed exceptions to the Commissioner's report, and on them the matter is now presented.

The Committee complains first of the Commissioner's ruling in sustaining an objection to a question propounded by it to the witness, Judge Meraux. This witness had testified that in his court, on confirmation of a default in any divorce case, he did not read or examine the petition and the return on the citation, but that he relied entirely on the explanation of their contents as given by the attorney. Then he was asked: "Would you have acted in the manner you did [granting judgments in the eight divorce cases] if you had examined that record?" When respondent's counsel objected to the question, the Commissioner ruled:

"The objection is sustained. His answer now as to what he would have done if he had read the record is immaterial, as he would not know what he would have done at that time anyhow, at this moment. The record speaks for itself."

The Committee contends, under its first complaint, that the Commissioner had no right to exclude the testimony; that it should have been received for consideration by this court which alone has the authority of determining whether or not it was competent evidence. The rules of this court are silent with reference to the power of the Commissioner to exclude evidence. In that capacity, however, he is a representative of the court, possessing delegated authority to receive all evidence directly touching upon the issues to be decided in the proceeding. Therefore, if evidence is offered that is manifestly inadmissible, such as that which is wholly irrelevant or rank hearsay or pure conjecture, the Commissioner, in our opinion, should not permit it to encumber the record; if, on the other hand, its inadmissibility does not clearly appear, he should admit it. The query directed to the witness, Judge Meraux, called for an answer based purely on conjecture, and we think that the Commissioner correctly sustained the objection.

Next, the Committee excepts to the finding of the Commissioner that there was no collusion, for the purpose of quick rendition of the divorce judgments, between Reed, the parties to the suits, and Judge Meraux. It insists that such finding is in conflict with certain observations of this court in Perez v. Meraux, 201 La. 498, 9 So.2d 662, 677, and In Re Reed, supra. The observation in the first named case was:

"Moreover, the evidence in the record unmistakably shows that the court over which

the defendant judge presided was used in obtaining illegal judgments of divorce and annulment of marriages where, in a large number of instances, collusion and fraud were employed. We are not impressed with the protestations of the judge that he had no knowledge of these facts—in other words, his claim that advantage was taken of him by the attorneys and litigants in these cases—for it is difficult for us to understand just how the judge could sit and hear such a large number of cases in which so many irregularities are patent on the face of the record and the notes of evidence so scant, without at least having his suspicions aroused as to what was going on. Particularly is this true when as many as three of these cases were heard by him in a single day. Then, too, the striking similarity in the method employed in the handling of these cases by the four principal attorneys who are involved should, in our opinion, have placed him on his guard."

In the other proceeding to which reference is made (the Reed matter decided on the exception of no cause of action), we said [203 La. 1008, 14 So.2d 820]:

"It is needless to discuss in detail the other divorce suits referred to by the Committee. It suffices to say that in each of the cases the records indicate, to say the least, that there was collusion between the parties to the suit."

Respondent is not bound by our comments in the Meraux case; he was not a party thereto and had no opportunity to defend himself. In the other proceeding, on the previous hearing, the charges

against respondent were being tested under his exception of no cause of action, and we merely observed that the documents attached to the petition indicated that collusion had been practiced. Hence, we held that the petition stated a cause of action. In concluding our opinion, however, we said:

"The disbarment Committee having brought the above charges against the defendant, the burden is upon it to sustain them by the production of lawful evidence when the case comes before this court on its merits. If the Committee fails to sustain the charges by the production of lawful evidence, the proceeding will be dismissed by this court in due course."

But the Committee further argues that the facts as found by the Commissioner, with reference to the method employed by Reed in obtaining the eight divorce judgments, disclose the existence of the contended collusion. These facts, to quote from the report, are:

"That the wife, plaintiff in the divorce suit, would come in and ask Mr. Reed to represent her in obtaining a divorce. Thereafter, the wife would contact the husband and tell him to call on Mr. Reed. The husband, defendant in the divorce suit, would come to see Mr. Reed. The defendant would accept service on the face of the petition. Then Mr. Reed would give the defendant a copy of an answer, which had been used in another case.

The defendant would follow this form and draw up his answer. The form handed to the defendant by Mr. Reed, and the

answer drawn by the defendant, following the form, would admit the allegations of plaintiff's petition and ask the Court to render judgment in favor of plaintiff. That the defendant's answer would be drawn up in Mr. Reed's office by somebody. That Mr. Reed would draw up a motion to fix the case for trial. That defendants, in the divorce proceedings, would accept service on the motion to fix for trial not knowing when the case would be set for a hearing. All the above procedure was followed by defendant in Mr. Reed's office before the suit was filed in St. Bernard Parish. That Mr. Reed would mail the petition, and the motion to fix for trial, to the Clerk of Court, St. Bernard Parish, or to Mr. Roy, associate attorney, to file in Court. That the motion to fix for trial might be filed before the defendant filed his answer. (The defendant would take care of filing his own answer.) That the answer could be signed by defendant and service accepted on the petition before plaintiff had signed the petition.

"However, the husband and wife did not come to Mr. Reed's office together."

Collusion, as defined by Webster's New International Dictionary (Second Edition), is:

"Collusion—1. A secret agreement and cooperation for a fraudulent or deceitful purpose; deceit; fraud. * * * 2. Law. An agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law. Bouvier. * * *."

▇ We do not conclude from the quoted finding of facts, or from the evidence itself, that respondent co-operated with the litigants and with Judge Meraux to obtain a fraudulent divorce in any one of the eight suits which he instituted in St. Bernard Parish; nor do we find that he practiced deceit or fraud on the court. A period of three years and two months intervened between the filing of the first case and the filing of the eighth and last case, thus showing that there was no continuous flow of divorce suits with which he was concerned. Moreover, in each case, according to the court records, the required witnesses were produced to prove the allegations of the petition. Therefore, it cannot be correctly said that respondent was guilty of collusion, as above defined.

▇ But, as correctly stated by the Commissioner in his report, "The evidence shows that the defendant was guilty of professional misconduct. His actions in having the defendants [in the divorce suits] come to his office, accept service, draw up answers from a form furnished by him. etc., were improper." And we wholeheartedly agree with the Commissioner that for a lawyer to resort to a procedure of that kind is to reflect generally on the entire Bar. What respondent did was certainly unethical, uncommendable, censurable, reprehensible. His malpractice cannot and will not be condoned by this court; rather we condemn it most vigorously and reprove respondent severely.

▇ Because of that misconduct the Commissioner recommended that respondent be suspended from the practice of law

for one month. To the recommendation, the Committee takes exception. It contends "that the Commissioner had no right to make any recommendations as to penalty, as that is a matter within the discretion of the Court and the Committee further contends that the period of suspension is not sufficient because such a short suspension will not be a deterrent to others to commit such offenses and probably not even to the defendant herein."

Respondent, under his objections to the report, insists that his actions do not warrant any punishment and that this proceeding should be dismissed.

It is true that the Commissioner, under the order of this court appointing him, was required only to take the evidence in the matter and to report his findings of fact and conclusions of law. But no harm has been caused by his recommendation as to the imposition of a penalty. The Commissioner's report is prepared and furnished solely for the court's assistance and convenience in determining the issues of the disbarment proceeding, and any recommendations contained therein are not conclusive on the court. It can and will, in its discretion, either reject or adopt them.

 If there had been no extenuating circumstances attending the perpetration of respondent's wrongdoing, we would unhesitatingly mete out at least the punishment recommended by the Commissioner. But respondent, as the record discloses, was not altogether to blame.

After experiencing much difficulty in obtaining service of process in his first few divorce cases filed in the Parish of St. Bernard where the litigants were domiciled (his office is maintained in the City of New Orleans), respondent made arrangements with Attorney William F. Roy, Jr., who lived in that parish and practiced in its court, whereby the latter would handle all of his divorce proceedings for a fixed fee of $15 per case. This associate counsel then informed him that the customary procedure in the court, in an uncontested divorce case, was to have the defendant in the suit to accept service of the petition, to make an actual appearance in the form of an answer, and to sign in blank a motion to fix the case for trial; and, during the trial, after the grounds for divorce were proven, to file in the record a note of evidence previously prepared by the attorney.

Acting upon the information and suggestion thus furnished him, Reed prepared, and obtained the required signatures to, the mentioned documents, and he forwarded all of them, except the answers, to either Roy or the Clerk of Court for filing. The associate counsel thereafter attended to the proving of the cases.

Furthermore, we find in the Commissioner's report the following observation, which is borne out by the record, namely: "Mr. Reed's attitude in the matter, as a witness and as the defendant in the case, was one of frankness and truthfulness. He readily answered all questions propounded to him, he did not try to evade any issue, and in the opinion of the Commissioner told the entire truth."

In view of the mentioned extenuating circumstances it is our belief that the con-

demnation which we express herein, with the resulting reprimand, constitutes a sufficient penalty for the malpractice indulged in by respondent. As pointed out in the matter of In Re Novo, 200 La. 833, 9 So. 2d 201, the primary purpose of a disbarment proceeding is not punishment, but the protection of the courts and the public, and disbarment should not be decreed if any discipline less severe would accomplish the desired result.

For the reasons assigned respondent, by our severe condemnation of the professional misconduct of which he is adjudged guilty, is hereby reprimanded; otherwise the disbarment proceeding against him is dismissed at his costs.

HIGGINS, J., takes no part.