258 P.2d 433

In re WILSON.

No. 5741.

Supreme Court of Arizona.

June 8, 1953.

Frank J. Barry, Jr., Tucson, for State Bar.

Bryce H. Wilson, Jr., in pro. per.

Darrel G. Brown and John T. Kettlewell, Tucson, for respondent.

PER CURIAM.

Bryce H. Wilson, Jr. (hereinafter called respondent), an attorney at law regularly admitted to practice before this court, was cited on April 14, 1952 to appear and answer seven charges of unprofessional conduct before the Local Administrative Committee for District No. 3 (hereinafter termed the Committee), sitting at Tucson, Arizona. Pursuant to Rule I (C) of the rules of the Supreme Court, as amended,

hearings were held thereon. Respondent was present in person at the principal hearing on June 14, 1952. The evidence adduced then and later primarily consists of: (1) a partial Reporter's Transcript of the testimony taken at the second trial of respondent in the superior court of Pima County, which criminal proceedings were based in part upon the same facts as herein charged (The jury was unable to agree upon a verdict at either trial); (2) two reels of a sound recording tape of the words spoken between respondent and one Dolores Raines in a private room at the Ghost Ranch Lodge near Tucson on June 7, 1950. This had been admitted in evidence at the first trial of respondent in the superior court, with a typewritten transcript thereof; (3) two compromising photographs of respondent and Dolores Raines; (4) the testimony of a deputy county attorney identifying the matters referred to under (1), (2), and (3), supra; (5) the testimony of respondent; and (6), certain affidavits submitted by respondent.

Thereafter, on August 19, 1952, the Administrative Committee made findings of fact as follows:

"I

"That between January 1, 1949, and January 1, 1951, Bryce H. Wilson was the duly elected, qualified and acting County Attorney of Pima County, Arizona, and a member of the State Bar of Arizona; that about February, 1950, the said Wilson met and became acquainted with one Dolores Raines who was then well known to said respondent Wilson to be a prostitute.

"II

"That during the period between February, 1950, and June, 1950, the respondent Wilson did on a number of occasions associate with the said Raines, not in furtherance of his duties as County Attorney.

"III

"That sometime between February, 1950, and June, 1950, the respondent Wilson did receive at least $50.00 from the said Dolores Raines, for protection from prosecution, the respondent making an express or implied promise of protection from prosecution. That the respondent Wilson knew the said Dolores Raines was engaged in prostitution commercially during said period and had reason to believe the money received by him from her was from her earnings as a prostitute in Pima County, and recommended that he be disbarred. Arizona;"

The complete record was then certified to the Board of Governors of the State Bar of Arizona (hereinafter termed the Board) for its consideration. The respondent did not personally or by counsel appear before the Board but he did file a verified Statement of Opposition. No additional evidence was proffered on the part of either the respondent or the Examiner representing the State Bar. The Board, after thorough consideration, approved of the action suggested by the Administrative Com-

mittee by recommending the disbarment of respondent.

The matter was orally argued before this court by the respondent, his attorneys, and counsel representing the State Bar. We granted permission to the parties to thereafter file briefs, which have now been submitted and the matter is ready for determination. Other than the admissibility of certain evidence which will shortly be treated, no question has been raised as to the procedural steps taken by the Administrative Committee and the Board of Governors. It manifestly appears that both bodies meticulously followed the procedure outlined under our rules, and the respondent has therefore been given ample opportunity to be heard in his defense.

The respondent objects to the consideration of much of the evidence admitted for the following reasons: (1) that the partial reporter's transcript of the second superior court trial is without a proper foundation; (2) that the sound tapes and transcription made therefrom have not been properly identified and are without a proper foundation; (3) that the tape recordings are not the originals or the best evidence; (4) that the pictures are inflammatory and without probative value.

The foundation was laid and the identification made, in the instances where those objections are urged, primarily by testimony of the deputy county attorney who had prosecuted respondent. He testified concerning his own knowledge of the evidence given at the trials and the substantial correctness of the reporter's transcript; of his acquaintance and knowledge of the person and voice of respondent and Dolores Raines, whose voices he identified in the recordings and whose likenesses he identified in the pictures.

Were this a proceeding in a criminal action, or a suit between parties in a civil matter, the objections as to foundation and identification would raise a serious question. However, the right to practice law is not an inherent right but a peculiar privilege granted and continued only to those who demonstrate special fitness in intellectual attainment and in moral character. Just as only those who pass the tests can enter the profession, only those who maintain the standards are allowed to remain in it. In re Greer, 52 Ariz. 385, 81 P.2d 96; In re Stolen, 193 Wis. 602, 214 N.W. 379, 216 N.W. 127, 55 A.L.R. 1355; 7 C.J.S., Attorney and Client, § 19.

The purpose and character of this type of proceeding is well stated in the case of In re Keenan, 314 Mass. 544, 50 N.E.2d 785, which is quoted in the leading case of In re Santosuosso, 318 Mass. 489, 62 N.E.2d 105, 107, 161 A.L.R. 892, where a similar objection to the admission of the record of a civil case in the disbarment proceeding was made:

"'* * * in deciding a case of this kind considerations of public welfare are wholly dominant. The question is

not whether the respondent has been "punished" enough. To make that the test would be to give undue weight to his private interests, whereas the true test must always be the public welfare. Where any clash of interest occurs, whatever is good for the individual must give way to whatever tends to the security and advancement of public justice'. * * *"

See also 5 Am.Jur., Attorneys at Law, sec. 261, and In re Russell, 57 Ariz. 395, 114 P.2d 241. These cogent principles cannot be defeated by the strict rules of evidence. The integrity of the courts and the safety of the public override such a view.

Section 20, Rule I (C) of this court governs the admission of evidence in disciplinary actions and it is in harmony with these principles.

> "*Witnesses and Evidence.* All witnesses shall be sworn in all proceedings hereunder. The rules of evidence applicable to the Superior Court of Arizona shall be followed as far as practicable, provided that evidence may be admitted and considered which possesses probative value commonly accepted by reasonably prudent men in the conduct of their affairs."

█ This section of the rule prevents a star chamber inquisitorial proceeding while providing for a hearing that comports with the concept of due process yet leaving those charged with conducting the investigation free of the rigid rules governing proceedings in court. This is the meaning of the limitation on the use of the rules of evidence "as far as practicable".

The respondent had a full opportunity to confront and cross-examine the witnesses against him during the criminal actions. See Werner v. State Bar, 24 Cal.2d 611, 150 P.2d 892. The identification and foundation established in the record for the various exhibits amply meet the test of Section 20, Rule I, supra, for admission and consideration of evidence, "which possesses probative value commonly accepted by reasonably prudent men in the conduct of their affairs". Therefore, we hold that all of the evidence objected to is properly before us.

█ In this jurisdiction it is well settled in matters involving disciplinary proceedings against attorneys for professional misconduct that (1) this court sits as a trier of the issues of fact, as well as law; (2) that the evidence need not necessarily show beyond a reasonable doubt the respondent's guilt of unprofessional practices, but it must be clear and convincing before we should impose a penalty therefor. In re Myrland, 43 Ariz. 126, 29 P.2d 483; In re Sweeney, 51 Ariz. 9, 73 P.2d 1349.

With this rule for our guidance we have carefully examined the complete record before us and it is our considered opinion that the evidence fully supports the findings

heretofore set forth. Modesty, coupled with charity for the respondent, prompts us to refrain from setting forth the details of the incriminating association between respondent and Dolores Raines, together with the lurid statements reproduced on the sound recorder. While respondent charges a "frame-up" by those private individuals who spied upon him to procure this damning evidence, he did not impeach the photographs and he admitted the voices heard on the recordings were his and hers, though he contended that deletions had been made therein. Respondent admitted receiving $50 from the prostitute, Dolores Raines, but stoutly maintained that it was not given for protection but in payment of legal service rendered her. The evidence as a whole, however, convinces us that "protection" money was actually paid to respondent.

It is universally recognized that the "acts of a prosecuting attorney in violation of his oath of office and against good morals are sufficient to justify his disbarment or suspension from practice". Annotation 9 A.L.R. 197, et seq. See also; Thornton on Attorneys at Law, Vol. 2, sec. 847; 7 C.J.S., Attorney and Client, § 23-g; In re Simpson, 79 Okl. 305, 192 P. 1097. Nothing could possibly do more to impede, obstruct or prevent the administration of justice, or destroy the confidence of the people in law enforcement than a corrupted prosecuting officer. The corruption in this case was the taking of "protec-

tion" money from a known prostitute then illegally operating a house of ill fame.

The evidence before us compels the conclusion that the respondent has proved himself unworthy of the trust placed in him as a prosecuting attorney and as an officer of this court. Our responsibility to the public and to the profession forbids that it should pass unnoticed. It is therefore ordered that respondent, Bryce H. Wilson, Jr., be and he is hereby disbarred from the further practice of law in the State of Arizona.