# TENNESSEE BAR ASSOCIATION v. HOWARD P. FREEMON.—362 S. W. (2d) 828.

Middle Section. June 9, 1961.

Certiorari Denied by Supreme Court December 8, 1961.

Kenneth Harwell, Nashville, and Joseph A. Freemon, Lawrenceburg, for appellant Howard P. Freemon.

John H. Henderson, Franklin, W. J. Harbison, Jr., and John J. Hooker, Jr., Nashville, for appellee Tennessee Bar Ass'n.

Certain Members of Tennessee Bar Ass'n, practicing at Lawrenceburg, amici curiae.

McAMIS, P. J. This action was instituted by the Tennessee Bar Association on July 7, 1959, seeking the permanent disbarment of defendant Howard P. Freemon for alleged misconduct growing out of what will be herein referred to as the Spinks divorce case and the Whitehead cases.

It is charged that while representing the husband in the Spinks case defendant entrapped Mrs. Spinks into committing an act of adultery and, while representing the plaintiffs in the Whitehead cases, made certain slanderous and defamatory remarks about opposing counsel in a petition to rehear.

The Chancellor found both charges sustained by the proof and on both grounds rendered a decree permanently disbarring defendant. Defendant has appealed and assigned errors. We consider first, as the principal ground urged for reversal, that the Chancellor erroneously considered, as evidence in this case, certain proof offered by Mrs. Spinks in the divorce suit.

Defendant was admitted to practice in 1941 and, for a number of years, has been practicing in Lawrenceburg as a member of the firm of Freemon & Freemon of which his father is the senior member. In 1955, the firm was employed by J. L. Spinks to bring a divorce action against his wife, a resident of Sheffield, Alabama, on the charge of desertion and wilful refusal to move with her husband to his home in Lawrence County, Tennessee. Mrs. Spinks filed an answer denying the charges of the bill.

After the answer of Mrs. Spinks was filed, defendant at the instance of his client, employed Herschel Copous, a former peace officer residing in Lawrenceburg, to go to Sheffield and place Mrs. Spinks under surveillance. About two weeks later, defendant, in company with Copous, went to Sheffield and parked near the home of Mrs. Spinks. Copous testified in the divorce suit that, while watching the home of Mrs. Spinks, he and defendant saw her leave in a car with a man and followed in defendant's

car a distance of about 100 miles to a point six miles out of Birmingham where Mrs. Spinks and the man entered, after dark, a room in Buckman Tourist Court and that he and defendant later entered the room and took pictures of them in an act of intercourse. Copous testified as a witness for defendant in this case. Defendant admits that he filed an amendment to the divorce bill charging Mrs. Spinks with adultery after taking pictures of her at the tourist court.

The answer of Mrs. Spinks to the amended bill alleges that on and after July 2, 1955, she was interviewed a number of times by a man who gave his name as Floyd Miller and who claimed to be demonstrating and selling aluminum cooking utensils; that in a short time Miller began making overtures of a romantic nature which, because of her age, she did not take seriously; that, finally Miller asked her if she would like to work for his company and said he would take her to see his manager in Birmingham who, upon his recommendation, had agreed to give her a job if she would come to Birmingham and sign a contract; that, upon arriving at Birmingham, she was told by Miller that the manager lived at Buckman Motel; that when they went to the room where Miller told her the manager lived no one was there but upon Millers' insistence that the manager would soon be there she remained in the room where Miller later snatched off her clothing, threw her down on the bed and was attempting by force to have intercourse with her when defendant and Copous suddenly appeared in the room and began taking pictures.

As to the foregoing, the answer of Mrs. Spinks charges that her husband ''in confederation with two or more of his cohorts, and since the filing of the bill in this cause,

concocted one of the vilest and most infamous schemes of entrapment to ruin her character and create a ground for divorce in favor of complainant that consciousless minds could devise.'' The answer does not expressly charge defendant herein with being connected with this scheme of entrapment. However, in her testimony in the divorce action Mrs. Spinks went into detail in charging defendant with being a prime actor in consummating it.

The Court sustained the charge of entrapment and on that ground among others dismissed the bill for divorce. The decree contains no finding that defendant, as attorney for Spinks, knowingly participated in the scheme of entrapment but he admits in this case that he actively participated in watching Mrs. Spinks at her home, and that he followed her to the tourist court and took pictures of her against her will in a most degrading and humiliating position. He says he did not testify in the divorce case on advice of his father who continued to represent Mr. Spinks. Complainant insists, we think with good reason, however, that the circumstances demanded that defendant clear his professional name even if it became necessary to withdraw from the case. The important question, however, is whether defendant was aware that Mrs. Spinks had been entrapped.

Under the holding of the Court that the finding of entrapment in the divorce suit is not binding on defendant as res judicata, the ultimate question is the correctness of the holding of the Chancellor that the testimony of Copous and Mrs. Spinks in the divorce case is admissible as substantive evidence against defendant in this disbarment proceeding. Complainant offered no other evidence and defendant and Copous both testified positively that there was no conspiracy of entrapment. In addition Earl

Hollis who was identified by Mrs. Spinks in her testimony in the divorce suit as the man who represented himself as "Miller" positively denied any part in the transaction. It results that if the only testimony offered by complainant is held incompetent the findings as to the Spinks case can not be sustained. We come then to that crucial and decisive question.

To sustain the action of the Chancellor in admitting the testimony of Mrs. Spinks as evidence in this case the Bar Association relies most strongly upon the leading case of Re Santosuosso, 318 Mass. 489, 62 N. E. (2d) 105, 161 A. L. R. 892. That case involved an inquiry into the professional conduct of Attorney Santosuosso. As the opinion points out, it was not a truly adversary proceeding but an information asking not for disbarment or other disciplinary action but rather for such action as the court might deem proper. But, we think, a more acute distinction lies in the fact that the evidence admitted was contained in the transcript of evidence in a case to which Santosuosso was a party, in which he appeared in person and by counsel and cross examined the witnesses against him and in which there was an adjudication of misconduct personal to him from which he could, if he chose, appeal.

The Association also relies upon State ex rel. Neb. State Bar. Ass'n. v. Gudmundsen, 145 Neb. 324, 16 N. W. (2d) 474; Werner v. State Bar, 24 Cal. (2d) 611, 150 P. (2d) 892; Re Lacy, 234 Mo. App. 71, 112 S. W. (2d) 594.

In the Gudmundsen case, after pointing out that there had been some doubt as to the admission of evidence in a disbarment proceeding of evidence heard in a former case, the Court summarized its holding by saying:

"It is thought, however, that this question should no longer remain in doubt. It is therefore the holding of this court that the finding in a civil action that an attorney at law has been guilty of conduct justifying disbarment is not conclusive on the same question when presented for determination in an action for disbarment; that notwithstanding the finding in the civil action the culpability of the attorney must be established in the disbarment action by a clear preponderance of the evidence. *For this purpose the evidence taken at the trial of the civil action and all other competent evidence is admissible.*" (Italics ours.)

It thus appears that there was a finding in the former case that the attorney had been guilty of conduct justifying the disbarment. There was no such finding in the present case.

In the Werner case, supra, the evidence admitted in the disbarment case was taken in a criminal proceeding against the attorney charging him with the theft for which disbarment was sought. The court ruled such evidence competent on the reasoning that, in reality, the parties were the same since in the former proceeding the attorney was prosecuted in the name of the people and the disbarment case against him was presented by the State Bar acting as an arm of the court and also representing the people of the state. In that case, as in the Santosuosso case, supra, the attorney was a party to the former proceeding so that his rights of cross examination and appeal were fully preserved and protected.

In Re Lacy, supra, also involved the question of the admissibility of testimony in a previous criminal proceeding against the attorney whose disbarment was

sought for the same alleged misconduct as that involved in the criminal case against him.

In only one case which has come to our attention has the testimony in a former proceeding to which the attorney was not a party and in which he acted only as attorney for one of the parties been admitted in a subsequent disbarment proceeding against the attorney. In the case of Re Durant, 80 Conn. 140, 67 A. 497, 10 Ann. Cas. 539, it was held that where a deposition of a witness had been taken in a former action by a wife for separate maintenance, and disclosed improper conduct on the part of the attorney for the wife and such witness had subsequently died, the deposition was admissible in a disbarment proceeding against the attorney. But in that case the attorney, anticipating that damaging testimony might be given against him, appeared and exercised the right of cross examination through another attorney and the witness had since died.

As a general rule, in ordinary adversary proceedings, the mere fact that testimony has been given in a former proceeding is not sufficient to give it the status of proof in another action. Even where the parties are the same and the issues identical if the witness is not shown to be unavailable his testimony at the former trial is mere hearsay. 20 Am. Jur. 582, Evidence, Section 689.

Some courts conceding the existence of the rule that the prerequisites of identity of parties, coupled with an opportunity to cross examine, and the unavailability of the witness must first be met, hold that disbarment proceedings are sui generis and that the strict rules of evidence do not apply. We are not willing to go so far. It would be strange indeed if an attorney when sued for

a grocery bill could invoke the same rules of evidence as other litigants but could not do so when an attempt is made to bar him from the right to practice his chosen profession. Nor do we believe such a holding would be in the public interest or necessary in order to purge from the profession persons so lacking in honor and integrity as to be unworthy of the right. It is the duty of the courts to condemn unethical and unprofessional practices but the end can not justify the means. In disbarment proceedings as in other court proceedings, in our opinion, it is better to adhere to methods for the ascertainment of truth which have stood the test of time.

■ Although authority to the contrary may be found, the general rule and what we conceive to be the better rule is that the same rules of evidence which apply in other judicial proceedings control the admissibility of evidence in disbarment proceedings. People ex rel. v. Amos, 246 Ill. 299, 92 N. E. 857; Re Richardson, 209 Cal. 492, 288 P. 669; In re Feldman, 373 Ill. 563, 27 N. E. (2d) 471; In re Eaton, 14 Ill. (2d) 338, 152 N. E. (2d) 850; Ex parte Montgomery, 244 Ala. 91, 12 So. (2d) 314; Armitage v. Bar Rules Committee, 223 Ark. 465, 266 S. W. (2d) 818; In re Reed, 207 La. 1011, 22 So. (2d) 552; In re Gardner, 232 Mo. App. 502, 119 S. W. (2d) 50, 121 S. W. (2d) 266; State ex rel. Nebraska State Bar Ass'n v. Bachelor, 139 Neb. 253, 297 N. W. 138; In re Porep, 60 Nev. 393, 111 P. (2d) 533; State ex rel. Oklahoma Bar Ass'n v. Hatcher, 201 Okl. 683, 209 P. (2d) 873; 5 Am. Jur. 438; 7 C. J. S. Attorney & Client p. 781.

Cases holding contrary include In re Wilson, 76 Ariz. 49, 258 P. (2d) 433 and State ex rel. Florida Bar v. Dawson, Fla., 111 So. (2d) 427 and see, generally, Anno. 161 A. L. R. 898, et seq.

We think State v. Bomer, 179 Tenn. 67, 162 S. W. (2d) 515, is not to be taken as opposed to the majority rule that the same rules of evidence apply in disbarment cases as in other judicial proceedings. In that case the record and decree in two other cases which Bomer himself had instituted were held properly admitted to show the result of the trial. As the opinion points out, 179 Tenn. at p. 77, 162 S. W. (2d) at p. 519, the records from the former suits were not considered as proof.

Although not disbarment cases, see as supporting the views above indicated Milne v. Sanders, 143 Tenn. 602, 228 S. W. 702; Security Finance Co. v. Duncan, 5 Tenn. App. 631.

While we think it was proper to file in this case the testimony of Mrs. Spinks to show a state of facts which seemed to call for defendant to make some explanation of his action, we can not say defendant's failure to testify in the divorce case standing alone is sufficient to warrant the conclusion that he was knowingly a participant with Copous in ensnaring Mrs. Spinks into an act of adultery if such be the facts of the case. It is conceivable that Copous and "Miller" could have laid the trap without the participation of defendant.

With the greatest deference to the able Chancellor, we must hold both upon reason and authority that the testimony taken from the transcript in the Spinks divorce case was improperly admitted as substantive evidence to sustain the charges of the bill.

If we are correct in holding that the testimony of Mrs. Spinks and Copous was improperly admitted in this case, there is no proof of misconduct on the part of defendant relating to that case except as admitted by

him. His testimony falls short of showing an intentional participation by him in the alleged entrapment of Mrs. Spinks. We regret to say, however, that his own testimony shows that he was over zealous and guilty of gross professional impropriety in accompanying Copous to spy on Mrs. Spinks at her home and, more especially, in taking pictures of her in a compromising position over her objection and later talking with her out of the presence of her counsel about the case and about her alleged misconduct. No lawyer should lower the dignity of his profession by such unseemly conduct. Further reference will be made to this misconduct after we have dealt with the Whitehead cases.

As to that charge the Chancellor found:

"Petitioner charges that the defendant, Freemon, was the attorney for plaintiffs in four personal injury cases of Bobby Fox and others against J. A. Whitehead in the Circuit Court at Lawrenceburg. Some of the plaintiffs were minors and oral settlements had been agreed upon with the insurance company with which the defendant carried liability insurance, subject, of course, to the approval of the Circuit Court. Prior to the written orders being submitted to the Circuit Judge, the law firm of MacFarland, Colley and Douglas filed a petition alleging that the defendant, Whitehead, (the insured), had misled them as to material facts concerning the case and had claimed to them that he did this at the instigation of Howard P. Freemon, attorney for the plaintiffs. The petition asked that the settlements which had been stated orally to the Court be set aside and vacated. The petition further alleges that a hearing was had on this petition on October 30, 1958, before the Honorable Joe M. Ingram, Judge of the Eleventh Judicial Circuit of

Tennessee, which Court found that the defendant, Whitehead, had misled and deceived the insurance company in an attempt to prejudice its defense. The Court further found that Whitehead had been directed to so mislead and deceive the insurance cowpany by the defendant, herein, Howard P. Freemon, and the Court ordered that a copy of the transcript of the testimony in that proceedings be forwarded by the Clerk to the Grievance Committee of the Tennessee Bar Association.

"The defendant, Howard P. Freemon, did not except to this order of the Court, but subsequently filed a pleading styled 'Petition for Rehearing,' stating in the second paragraph thereof that the petitioner had no objection to the settlements referred to being set aside. His petition then stated that he desired an opportunity to introduce testimony to the effect that Whitehead had been promised $5,000.00 as consideration for his false testimony, that the charges made against him were a conspiracy planned by Lon MacFarland, a member of the Maury County Bar, that MacFarland's motive in making such a charge was personal animosity plus greed and a desire to enrich himself by discrediting Howard P. Freemon, and that the said Lon MacFarland and his associates had attempted 'to move in' on four cases in the United States District Court at Nashville on September 2, 1958, and to oust him from such lawsuits wherein he had been legally employed. The Petitioner alleges that these charges made by Freemon were not pertinent to the issues raised by the action of the Court in setting aside the proposed settlements in the Whitehead cases, that they were made maliciously and without investigation, and were an abuse of the Court's processes to retaliate against Lon MacFarland. The petitioner filed as Exhibits 5, 6 and 7 to this portion

of the charges certified copies of the 'Petition for Rehearing,' the order of the Court overruling same and a transcript of the evidence introduced before the Court on the hearing of that petition. Reference to the petition to rehear discloses that it also alleged that 'It is a dangerous and expensive thing to have a man such as Lon MacFarland ready to try to persuade the clients to testify falsely or to turn against their duly employed attorney.' [1]

"The only evidence introduced by the petitioner in the present case to support this portion of its charges against the defendant, Freemon, were Exhibits Nos. 5, 6 and 7 to the bill. The defendant, Freemon, on the contrary, testifying in his own defense, readily admitted that he had no objection to setting aside the proposed settlements of the suits against Whitehead and that on the trial of these cases he recovered in each suit a larger verdict than had been agreed upon in settlement. He readily admitted that he deliberately made harsh and serious charges against Lon MacFarland and that this was done in an effort to badger MacFarland into taking the stand so that he might be subjected to cross examination. Freemon testified that he was especially anxious to show on cross examination MacFarland's hostility to him. Among other things he wanted MacFarland to deny having made an election bet sometime previously. If MacFarland denied making such a bet, Freemon was positive that he could prove the falsity of such denial. (This Court feels that Freemon would have been bound by MacFarland's answer on such a collateral matter and that no further proof would be permitted.)

[1] This allegation of the petition is not charged as a ground for disbarment.

"In response to a question by the Court at the conclusion of his testimony, the defendant, Freemon, admitted that there was nothing in his petition to rehear going to the merits of the Court's action in setting aside the proposed settlement in the Whitehead case. Judge Ingram had heard this petition on January 31, 1959, had dismissed it, and had further ordered that a copy of the order and a transcript of the evidence taken at the hearing thereon be forwarded to the Grievance Committee of the Tennessee Bar Association."

After discussing the Spinks case the opinion of the Chancellor continues::

"The other misconduct charged against the defendant grew out of his misconduct following the setting aside of the proposed settlements in the Whitehead cases. He admitted that nothing in his lengthy 'Petition for Rehearing' questioned the merits of the Court's action in setting aside such proposed settlements. His only excuse was that the original petition to set aside the settlements (which petition was not introduced by either party) charged him with misconduct and that he necessarily had to use the same vehicle adopted by his adversary. It is plain to the Court that Freemon was actuated by motives of personal hatred and ill will toward Lon MacFarland and that he used the processes of the Court wilfully, maliciously and without probable cause to degrade a fellow member of the Bar. The law is well settled in Tennessee in the case of State v. Bomer, supra, that where this is done, permanent disbarment is proper, and it is the judgment of the Court that the defendant, Howard P. Freemon, be permanently disbarred for such misconduct in the Whitehead cases."

We concur in these findings except as to defendant's motives hereinafter discussed and we do not find in the record on appeal any finding by Judge Ingram that Whitehead had been directed by defendant herein to mislead the insurance company.[2] We think Judge Ingram's remarks during the hearing show that it was not his intention to make a finding on that question but that he only intended to determine whether the settlement agreement should be set aside and the record sent to the grievance committee of the State Bar Association for its investigation.

Defendant attempts to justify the charges against MacFarland upon the ground that the petition to have the settlement in the Whitehead cases set aside had leveled similar unprofessional charges against him. Of course, the request that the alleged collusion with Whitehead be referred to the Grievance Committee of the State Bar Association implies a charge of unprofessional conduct. However, there is no direct charge of collusion, the assertion being merely that Whitehead had made the statement that he had acted at the instance of defendant. It is not difficult, however, to understand how defendant may have construed the petition as a charge against himself. He testified that the charges against Mr. MacFarland were included in the petition because the Court had ordered a transcript of the hearing sent to the Grievance Committee and he wanted the members of the Committee to know that he felt the charges against him were actuated by the alleged personal animosity of Mr. MacFarland toward him.

---

[2] For some reason unexplained defendant is not charged with conspiring with Whitehead as a ground for disbarment.

While neither of these grounds is sufficient to justify charges against a highly respected member of the Bar, we think it is important to consider them as showing what was in defendant's mind and in determining the period of disbarment.

In State v. Bomer, supra, 179 Tenn. 67, 162 S. W. (2d) 515, disbarment was decreed upon the ground that Bomer had maliciously and without reasonable grounds instituted disbarment proceedings against two other attorneys.

The Court quoted with approval from In re Adriaans, 17 App. D. C. 39 as follows:

"He (a lawyer) has no right to attempt to cast foul and unfounded aspersions upon the character and conduct of his brother members of the bar, any more than he has to asperse and defame, without justification, the character and motives of the judge upon the bench. Especially is he without warrant in an attempt to make the records of the courts, from the lowest to the highest, vehicles of malicious scandal and libel of any member of the bar."

After quoting from People ex rel. Rogers v. Green, 9 Colo. 506, 13 P. 514; and citing In re Ray S. Reid, 45 App. D. C. 240, L. R. A. 1916 F, 394 and In re Fred S. Macy, 109 Kan. 1, 196 P. 1095, 14 A. L. R. 848, our Supreme Court said:

"That the Court has the power, independent of statute, to enter a decree of disbarment for wrongs against the integrity of individual members of the bar, cannot be denied, especially so when committed with wilful and malicious intent. It is essential to the orderly administration of justice and for the preservation of its own

dignity and honor that the officers of the court should be honorable in their dealings, not only with the court but with each other. Surely they cannot be honorable without being truthful. For the defendant to be permitted in the light of the concurrent findings of fact to claim exemption from punishment under the guise of constitutional privilege of free speech, would be to despoil the law of its virtue and bring discredit upon the courts of Tennessee."

In connection with an annotation at 94 Law Ed. p. 141, it is said:

"A wanton or malicious accusation of a serious nature by one attorney against another may be the basis of the former's disbarment, whether the aspersion is in a pleading in an action, in the course of a disbarment proceeding, in an attempt to intermeddle between the other attorney and his client or otherwise."

In support of the above statement the author cites, in addition to Re Reid, supra, Re Adriaans, 17 App. D. C. 39; Thatcher v. United States, 6 Cir., 212 F. 801; Duke v. Committee On Grievances, 65 App. D. C. 284, 82 F. (2d) 890.

■ We have found no cases holding contrary, though of course each case must be determined on its own peculiar facts, including the gravity of the defamatory remarks, in light of all the circumstances. On appeal, we review the disciplinary action decreed by the trial court as one of discretion to be overturned only where there has been an abuse of the sound discretion reposing in that court. State v. Bomer, supra; Thompson v. Denman, 164 Tenn. 428, 50 S. W. (2d) 222; Schoolfield et al. v. Bean

et al., 26 Tenn. App. 30, 167 S. W. (2d) 359; State v. Denman, 36 Tenn. App. 613, 259 S. W. (2d) 891.

With respect to the charge of misconduct in the Whitehead case, as we have noted, the Chancellor seems to have been under the impression that Judge Ingram had found defendant guilty of inducing Whitehead to deceive the insurance company. How much weight was given this assumed finding of Judge Ingram we can not know. Nor can we be sure what the period of suspension on this charge would have been had the Court not also found defendant guilty of misconduct based upon the alleged entrapment of Mrs. Spinks.

The charges made by the defendant in the Bomer case, supra, were much more aggravated and were made maliciously and deliberately, long after the event, to wreak vengeance on the attorneys by false charges of misconduct and to prevent the appointment of one of them as United States District Judge. While not to be condoned, in this case the abuse of process seems to us to have been more defensive than a malicious attempt to injure Mr. MacFarland out of a spirit of ill will and revenge.

In respect to the charge of misconduct in the Spinks case, because of our disagreement with the learned Chancellor as to the admissibility of the testimony of Mrs. Spinks, we can not give to the exercise of his discretion the weight which would ordinarily be accorded in fixing the period of suspension or disbarment.

If we had not felt compelled to disagree with the learned Chancellor on the admissibility of Mrs. Spinks' testimony and had concluded as he did that defendant was a party to the entrapment of Mrs. Spinks, we would have

no hesitancy in agreeing that permanent disbarment is warranted.

For the reasons indicated, however, we hold that for defendant's admitted misconduct in the Spinks case and for making the charges against Mr. MacFarland in the Whitehead cases, the defendant will be disbarred for a period of ten years with the privilege of applying to the Chancellor at the end of five years for re-instatement which in the discretion of the Chancellor may be granted upon a showing of good character and that defendant has faithfully observed the decree of disbarment by refraining completely from practicing law upon such conditions as the Chancellor may provide and upon the further condition defendant is not permanently disbarred upon the remand hereinafter ordered.

As to the charge of entrapment, defendant's counsel very properly conceded when the case was argued that if the finding of the Chancellor should be reversed because of the admission of Mrs. Spinks' testimony, the case should be remanded for a full development of the facts and, if found guilty of such entrapment, defendant should be permanently disbarred. It will be so ordered.

Other questions of a technical nature made by the assignments have been considered and found without merit.

On the question of the admissibility of Mrs. Spinks' testimony we wish to acknowledge the helpful brief filed amicus curiae by the members of the Lewisburg Bar.

All costs of appeal will be taxed to defendant and surety on the appeal bond. Costs below will remain as taxed.

Cooper, J., concurs.

Howard, J., dissents.

Howard, Judge (dissenting).

Defendant's acts of misconduct were inexcusable for an experienced attorney. They showed a total lack of appreciation of his obligations as an officer of the Court. Attorneys are under a two-fold duty to maintain the high standards of the legal profession and to protect the Courts, of which they are officers, from derision, reproach, unjust criticism and public prejudice; and Courts should not hesitate to remove an attorney whose proven acts of misconduct are incompatible with this duty. Based on the facts stated in the opinion I think that the defendant should be permanently disbarred.