12 So.2d 314

**Ex parte MONTGOMERY,**
**6 Div. 46.**

Supreme Court of Alabama.
Feb. 25, 1943.

Erle Pettus, of Birmingham, for petitioner.

Jas. W. Aird, of Birmingham, for Board of Commissioners.

FOSTER, Justice.

This is a proceeding to review the conviction and sentence of petitioner an attorney at law by the Board of Commissioners of the Alabama State Bar by whom he was suspended from the practice for two years, and that he then be automatically reinstated. He was found guilty of the charges generally, without specifying any particular charge, by a vote of twelve yeas and seven nays.

Charges 1, 3 and 5 were that certain conduct of his was contrary to section 63, Title 14, Code of 1940, and charges 2, 4 and 6 were that the same conduct was contrary to section 73, Title 14, Code, supra. Both statutes define the offense of bribery. Charges 1 and 2 alleged that this was contrary to Rule 1, section A of the Board of Commissioners of the State Bar. See 239 Ala. XXIII. Charges 3 and 4 that it was contrary to Rule 33, section A, supra. Charges 5 and 6 that it was contrary to Rule 34, section A, supra.

Charges 7, 8, 9, 10 and 11 alleged a violation of Rule 34, section A, supra, in that by charges 7, 8 and 9 he conspired with certain named persons to permit gambling and gambling devices, and by charge 10 that he made arrangements with the sheriff of Blount County to permit gambling operations in that county, and thereby violated section 63, Title 14, Code of 1940; and by charge 11 that the same conduct violated section 73, Title 14, Code, supra. (There was no proof of charges 10 and 11.) Charge 12 alleged a violation of Rule 36 of the State Bar by reason of the acts set forth in the preceding charges.

The evidence shows that on July 26, 1940, the grand jury of Jefferson County had under investigation the conduct of Harry E. Smith, who was then sheriff of that county since January 15, 1939, with a view of determining whether his conduct was such as to justify a recommendation for his impeachment. It resulted in such recommendation, followed by filing an impeachment proceeding, which was not tried because he resigned his office before it came on for trial.

This petitioner testified before the grand jury in that investigation. His testimony was taken down and reported by the reporter and offered in evidence on the trial

of the disbarment proceeding now under review. The competency of such evidence was challenged on that trial. The commission made no ruling on it in view of rule 18, section B, whereby the board is directed to consider only such evidence as is in its opinion relevant, material and[1] competent, and shall not consider any testimony which in its opinion is irrelevant, immaterial and incompetent.

Since there was no specific ruling by the commission on the competency of that evidence we will presume that they considered it if we conclude that it was competent, and that they did not if we hold that it was incompetent. On this review we will only consider such evidence as in our opinion was competent.

Rule 22, section B provides that the degree of proof shall be as in civil cases. This proceeding is neither strictly civil nor criminal. Ex parte Thompson, 228 Ala. 113[4], 152 So. 229, 107 A.L.R. 671; Ex parte Messer, 228 Ala. 16[3], 152 So. 244; In re Fite, 228 Ala. 4, 152 So. 246; 7 Corpus Juris Secundum, Attorney and Client, §§ 28, 34, pp. 770, 793. It has not been suggested that this rule violates any rights of petitioner.

The competency of the evidence must be tested by such principles as apply to a suit triable according to the course of the common law.

Petitioner insists that to use his evidence given before the grand jury is a violation of the secrecy of grand jury proceedings under sections 85, 73 and 87, Title 30, Code of 1940, and is incompetent under section 272, Title 14, Code, supra, as well as section 6, Article 1, Constitution of 1901.

Sections 73, 85 and 87, Title 30, Code of 1940, cited by petitioner, do not prevent the use of testimony given by a witness before the grand jury when it is otherwise competent in a subsequent proceeding against him unless expressly made so by statute. Coplon v. State, 15 Ala.App. 331 (8 and 9), 73 So. 225; Pellum v. State, 89 Ala. 28, 8 So. 83; State ex rel. Brown v. Dewell, 123 Fla. 785, 167 So. 687; 24 Am.Jur. 866, § 49.

In 24 Am.Jur. 867, § 49, it is said that the rule of secrecy concerning matters transpiring in the grand jury room is not designed for the protection of the witness before the grand jury, but for that of the grand jurors, in the furtherance of public justice; that the purpose of secrecy is largely accomplished after the indictment is found, the accused arrested and the grand jury finally discharged; and the witness has no privilege to have his testimony kept secret when it becomes material in the administration of justice. See, also, State ex rel. Brown v. Dewell, supra; note 127 A.L.R. 281 et seq.; United States v. Socony-Vacuum Oil Co., 310 U.S. 150, (37), 60 S.Ct. 811, 849, 84 L.Ed. 1129; Metzler v. United States, 9 Cir., 64 F.2d 203.

The duty of the grand juror to keep secret the proceedings as set out in the oath prescribed by section 73, supra, refers primarily to their deliberations. There is nothing to the contrary in Hall v. State, 134 Ala. 90, 112, 113, 32 So. 750, cited by counsel for petitioner. 24 Am.Jur. 866, § 49. The evidence taken before them is governed by the principles which we have stated.

The requirements of section 87, Code, supra, are not a limitation on that rule as declared in Pellum v. State, supra.

We revert to the question of whether this petitioner is protected by section 272, Code, supra. The immunity there provided was to prevent a miscarriage of justice and to suppress gambling so that it could be proven by one who participated. It was provided that a witness would be exempt from prosecution for an offense so described; and by section 273, supra, if he failed to testify he was guilty of a misdemeanor, and was also in contempt. Newsum v. State, 78 Ala. 407. The immunity provided in section 272, supra, justifies the requirement that the witness shall give evidence before the grand jury as to gambling, though it may incriminate him. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819.

And it is clear that he cannot be prosecuted on account of his participation in the game of which he gave evidence before the grand jury. Sandwich v. State, 137 Ala. 85, 34 So. 620. The offense for which he was immune from prosecution was some violation of the gaming and lottery laws to which he had testified before the grand jury upon a summons.

---

[1] 242 Ala. XV.

■ There is no general immunity from prosecution for an offense to which a witness testified before the grand jury. See sections 111, 113, Title 29, Code of 1940. And such testimony cannot be required under compulsion, except in respect to a matter as to which he is by statute thereby made immune.

■ This proceeding is not a prosecution of petitioner for an offense as contemplated by section 272, supra. It means a prosecution for a crime. As we have noted, this is not a criminal prosecution at all.

■ Moreover, this contention can only apply to charges 7, 8 and 9, and there was ample proof of charges 1, 2, 3, 4, 5 and 6 which had no relation to gambling, and as to which there was no immunity under section 272, supra, nor any other statute.

■ Petitioner next contends that his testimony before the grand jury was in answer to a summons and that he was under a legal compulsion thus to testify, and therefore that to use it against him violates section 6 of the Constitution, whereby he cannot be made to give evidence against himself.

The evidence of the assistant solicitor who conducted the grand jury investigation was that before petitioner was summoned before them as a witness, he went to the office of petitioner and interviewed him about the matters proposed to be proven by him, in which petitioner told him everything, "that I believed he knew about it." That no promise of immunity was made to him, nor hope or promise of reward: that his testimony was voluntary, in response to a grand jury subpoena. That no point on his constitutional or legal immunity was made. But he told the assistant solicitor in that interview, "But of course I can't testify to this."

Petitioner testified on the hearing of the disbarment proceeding and in it made no claim that there was any compulsion to get him to testify as he did before the grand jury, or that it was not voluntary. He was a competent attorney, and was, we assume, well aware of his constitutional and legal rights; and he makes no claim to the contrary.

Whatever legal duty exists to respond to a summons and testify, without other compulsion, when he is not under arrest nor accused of the crime, especially when he has full knowledge of his legal rights under section 6, Constitution, supra, it is not a violation of its benefits to use such evidence against him (Wilson v. State, 110 Ala. 1, 20 So. 415, 55 Am.St.Rep. 17; Coplon v. State, supra; 28 R.C.L. 430, 431), unless there is some other immunity provided by law.

None of the circumstances exist in this case which extend to petitioner the immunity of section 6, Constitution, supra.

Petitioner insists that the conduct to which he testified before the grand jury does not show bribery under either section 63 or 73, Title 14, Code, supra; that he only participated in an effort to induce the sheriff to perform a legal duty which he should have done without compensation; that bribery contemplates a corrupt act in that respect; that it is not corrupt to pay a sheriff to perform a legal duty which he refused to do without compensation, though the sheriff may be corrupt in so demanding.

■ True, corruption is an element of the offense. White v. State, 103 Ala. 72, 16 So. 63. But according to his own testimony the officer receiving the compensation was corrupt in doing so, therefore the act of his in giving it must also be treated as corrupt.

■ A public officer is guilty of bribery if he accepts compensation for doing an act which is no more than he was legally bound to do. 9 Corpus Juris 405, note 41; 11 C.J.S., Bribery, § 2.

■ We do not wish to say that the sheriff in fact acted corruptly. He is not here on trial. But the testimony of petitioner is to the effect that he was corrupt, and that petitioner was a party to it. So that it is only insofar as petitioner is concerned that we will treat the conduct of the sheriff as corrupt. This testimony was given apparently to impeach Smith as sheriff. While the testimony of petitioner in this proceeding conflicted with that before the grand jury in some respects, yet both versions of the transaction were to the effect that petitioner was a willing vehicle by which money was carried to the sheriff and paid to him in person or used in paying a debt of the sheriff on which this petitioner was an indorser, and that this was done to influence him in the performance of an official duty, made bribery by the Code sections, supra. This was in violation of rule 34, section A, and intimately related to his profession as an attorney in violation of

rule 36, charge 12. "Misconduct outside of his professional dealing may be sufficient to justify his disbarment when indicative of moral unfitness for the profession." 5 Am.Jur. 426, section 276; 7 Corpus Juris Secundum, Attorney and Client, p. 762, § 24. His testimony before the grand jury also justifies an inference that he was acting as attorney for Esdale, the bail bondsman.

█ Charges 10 and 11 relate to a conspiracy with the sheriff of Blount County. But they were not proven.

Charges 7, 8 and 9 relate to a conspiracy (in 7) with the said Harry E. Smith as sheriff of Jefferson County to permit gambling, and (in 8 and 9) with the gamblers to violate the gambling laws of Alabama.

The testimony of petitioner before the grand jury corroborated by much other evidence is sufficient to support those charges in accordance with the degree of proof required by rule 22, supra. It is not necessary and would serve no useful purpose to discuss it.

Upon a careful consideration of the legal evidence, including such portions of that given by petitioner before the grand jury as are legal and competent, we find ourselves in accord with the finding of the Board of Commissioners on the law and facts.

All the Justices concur in the foregoing view.

The sentence of the commissioners is modified so that the period of suspension is fixed at three years, and during that time petitioner shall not be heard on an application for reinstatement, and he shall not be then automatically reinstated, but his suspension shall continue thereafter subject to his right to petition for reinstatement under section C of the rules of the Board of Commissioners (239 Ala. XXIX). See the final order in the case of Ex parte Thompson, supra, as modified by section C, supra.

Modified and affirmed.

THOMAS, LIVINGSTON, and LAWSON, JJ., concur.

BOULDIN, Justice (limited concurrence).

This court is, by the record in this case, confronted with the grave duty to face our own responsibility in dealing with the misconduct of attorneys at law. They are officers of the court directly related to the administration of justice as defined by law.

As a background for the bribery which we have found, and directly connected with it, was a deal between appellant and a candidate for Sheriff of Jefferson County by which appellant made a large contribution in money to the campaign fund of the candidate in consideration that, when elected, the Sheriff should appoint a chief deputy named by appellant, and employ legal counsel named by appellant, all looking to a manipulation of the office so that appellant be reimbursed for his contribution.

This transaction, shown by unquestioned evidence, was, in its nature, putting up money to elect a corrupt official, one who bound himself, in consideration of promoting his election, to give appellant domination over his official acts. It was grossly corrupt on the part of both.

He who knowingly and for an unlawful and corrupt purpose aids in the election of a corrupt official undermines the very foundations of democratic government; makes a mockery of the fundamental concept of public office as a public trust. No people can be a free people whose destinies are in the keeping of a corrupt officialdom. Of all men, such misconduct on the part of an attorney at law is highly reprehensible. I do not think any member of this court means, even by implication, to hold this is no more than bribery by paying a public officer to perform an official duty. I think duty impels us to take note of above facts, if no more, and to render judgment accordingly. In my opinion our judgment should be disbarment, not suspension of the rights and privileges of an attorney at law.

I concur in the holding that application for reinstatement be permitted after the expiration of three years. This is in keeping with the policy of the law; holds open the door of hope, affords an incentive to make a comeback and prove oneself a worthy member of the legal profession.

GARDNER, C. J., and BROWN, J., concur.