Appellant, Robert Cabell Reeves, was arrested for driving under the influence of alcohol in violation of § 32-5A-191, Code of Alabama 1975, on November 12, 1983. A Montgomery County jury found appellant guilty as charged on March 1, 1984, and he was sentenced to six months in the county jail, which was suspended, and fined $250. *Page 1043 
On November 14, 1984, Sharon L. Wallace was on her way home from a movie when she stopped for a red light at the intersection of the Southern Bypass and Wallace Drive. As Ms. Wallace was watching her rear view mirror, a silver truck collided with the rear of her car. Ms. Wallace determined that no one was hurt and inspected the damage. Appellant was behind the steering wheel of the truck, and, according to Ms. Wallace, appeared to be the same person who was driving the truck upon impact.
The police did not arrive until about thirty minutes after the accident. While waiting, appellant suggested that he pay for any damage and that they simply leave the scene of the accident. Due to appellant's apparent desire to leave the scene of the accident, Ms. Wallace observed appellant the entire time before the police arrived. Ms. Wallace did not maintain "direct eye contact" with appellant, but he was within her line of vision the entire time. Ms. Wallace did not observe appellant drink any alcoholic beverages while in her field of vision, although she did smell alcohol when in his presence.
Officers William R. Morris and W.C. Martin arrived at the scene and observed that appellant was seated in the driver's seat of the truck. Officer Martin asked for the driver's license of the person driving the vehicle and appellant gave his license to Officer Martin. Officer Martin asked if appellant was driving and he responded affirmatively. A whiskey bottle was found in the truck and the officers noted that appellant smelled of alcoholic beverage, slurred his speech, and required assistance when on his feet. A field sobriety test was administered, which appellant failed. Appellant was placed under arrest. Appellant's traveling companion became verbally abusive toward the officers, and was also arrested.
Officer Jack Clark conducted a gas chromatograph intoximeter (G.C.I.) test on appellant at the Montgomery Police Department approximately two hours after the accident. This test indicated that appellant had a .17 percent blood alcohol level at the time of testing.
Appellant's father testified on behalf of the defense and stated that appellant had been involved in a motorcycle accident in July of 1979. His father stated that this accident resulted in a brain stem contusion which caused appellant to be forgetful, and to slurr his words and which affected his physical coordination. He also said that the physical manifestation of his injury was more pronounced at night than during the day. On cross-examination, the father admitted that his son (appellant) told him on the night of the incident that he had been drinking and had been involved in an accident.
 I
Appellant first contends that the City failed to prove that he was the driver of the vehicle which collided with Ms. Wallace's vehicle. This contention is without merit. There was ample evidence presented by the prosecution from which the jury could find that appellant was the driver of the vehicle in question. It was proper for the officers to arrest appellant even if they did not personally observe him driving the vehicle. Pace v. City of Montgomery, 455 So.2d 180
(Ala.Crim.App. 1984).
The testimony of Ms. Wallace clearly supports the jury's finding that appellant was driving the silver truck at the moment of the collision. Ms. Wallace was rigorously cross-examined by defense counsel and steadfastly maintained that the person she saw driving the silver truck, through the rear view mirror, was the same person she observed behind the wheel when she approached the truck moments after the collision. The defense offered no evidence to rebut this contention. The police officers testified that appellant acknowledged that he was the driver of the automobile. His actions were consistent with his being the driver. "Whether circumstantial evidence tending to connect the defendant with the crime excludes, to a moral certainty, every other reasonable hypothesis than that of the defendant's guilt *Page 1044 
is a question for the jury and not the court." Cumbo v. State,368 So.2d 871, 875 (Ala.Crim.App. 1978), cert. denied,368 So.2d 877 (Ala. 1979).
 II
Appellant maintains that the City failed to show that he did not have access to alcohol while he was at the scene prior to the arrival of the police officers. Ms. Wallace testified that she observed appellant from just prior to the collision until the police arrived. There was no evidence offered to suggest that appellant consumed any whiskey from the bottle found in the truck, between the time of the collision and the arrival of the police. Similar facts were presented in Bush v. State,341 So.2d 965, 966 (Ala.Crim.App. 1976), cert. denied,341 So.2d 967 (Ala. 1977), where this court held that "the jury was justified in finding that the appellant did his drinking before
the wreck, and was guilty of driving while intoxicated." (Emphasis in original.)
 III
Appellant contends that the City failed to lay the proper predicate for admission of the G.C.I. test results, in that it was not shown that the particular test method used had been formally approved and adopted by the law enforcement agency which administered the test in question. The case sub judice is very similar to Estes v. State, 358 So.2d 1050, 1054
(Ala.Crim.App. 1977), cert. denied, 358 So.2d 1057 (Ala. 1978), where this court stated:
 "Admittedly there was no testimony specifically stating which test the Mobile Police Department had authorized. Yet a reading of the testimony of Sergeant Carroll R. Mason, the test operator, can leave no doubt as to which test was, in fact, designated and authorized. In this regard, Sergeant Mason testified that he had been operating the PEI test `ever since they first started; its been I'd say eight or ten years;' that in that time he had given well over a thousand tests; that he was sent to the Police Academy in Montgomery for training; that he was licensed by the State Board of Health; and that he followed a check list and the rules of the State Board of Health in administering the test. In our opinion this was sufficient compliance with the Alabama Chemical Test for Intoxication Act to constitute a proper, if not formal, predicate for the admission of the test results."
According to Estes this element of the predicate may be supplied by "any officer who would be in a position to know which test was authorized." Estes at 1053. In the case at bar Officer Clark testified that when the Montgomery Police Department sent him to school in order to learn the operations of the G.C.I. instrument, he was told that "this instrument had been selected and approved by the Chief of Police for use by the Montgomery Department." Officer Clark further testified that he followed a checklist and performed the test according to the methods approved by the State Board of Health and that he possessed a valid permit, issued by the State Board of Health, to operate this instrument, thus satisfying the first and second elements necessary for laying the proper predicate for admission of the G.C.I. test results. See Estes at 1053. It is clear from the testimony of Officer Clark that the G.C.I. test was an authorized method of determining the blood alcohol level of a person suspected of driving under the influence of alcohol in Montgomery. Having determined that all the elements necessary for laying the predicate for admission of the G.C.I. test were properly proven, we find no error in allowing the results of this test to go before the jury.
 IV
After the jury had retired, defense counsel informed the court that he and appellant had overheard two ladies of the jury discussing a D.U.I. case and that appellant had "understood the remark to be that she had identified him as having a prior conviction . . .". The trial judge offered to call the jury back into the courtroom and instruct them that "all they're supposed to *Page 1045 
do is consider the evidence in this case and nothing else." Defense counsel declined to accept the court's proffered instruction, stating he thought the "instruction would do more harm than good." The court then overruled appellant's motion for a mistrial based on these unsubstantiated remarks.
A motion for a mistrial should not be granted where the prejudicial qualities of the comment can be eradicated by the trial court's instructions to the jury. Nix v. State,370 So.2d 1115, 1117 (Ala.Crim.App.), cert. denied, 370 So.2d 1119 (Ala. 1979); see also Carroll v. State, 440 So.2d 343 (Ala.Crim.App. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1299,79 L.Ed.2d 698 (1984). It is clear that when improper comments are made by counsel concerning the commission of other offenses by an accused, such comments are capable of being eradicated from the jury's consideration by prompt action of the trial court.Nathan v. State, 436 So.2d 19 (Ala.Crim.App. 1983); Floyd v.State, 412 So.2d 826 (Ala.Crim.App. 1981); Diamond v. State,363 So.2d 109 (Ala.Crim.App. 1978).
Although the statements contested in the case sub judice were not made by counsel (as in the cases cited above), we believe that the same theory holds true. If the comments were in fact made by a juror, any prejudice resulting therefrom could possibly have been eradicated by a timely and proper instruction to the jury from the trial court. We note that appellant left this matter in such a posture that neither the trial judge nor this court, has been given evidence of exactly what the jurors were discussing or about whom their discussion concerned. Appellant's failure to pursue this matter further, when offered the opportunity to do so by the court, constituted a waiver of any objection he may have had to the possible conversation of the specified jurors. The court did not have the opportunity to instruct the jury, due to appellant's request that an instruction not be given, presumably because counsel believed it more beneficial not to have the instruction given. Therefore, since counsel requested that the jury not be further instructed, he cannot now seek to predicate error on the trial court's denial of his motion for mistrial. See Henryv. State, 468 So.2d 896 (Ala.Crim.App. 1984); see also UnitedStates v. DeLucca, 630 F.2d 294 (5th Cir. 1980), cert. denied,450 U.S. 983, 101 S.Ct. 1520, 67 L.Ed.2d 819 (1981) (when jury learns of co-defendant's guilt, defense counsel's failure to request curative instruction does not require reversal when trial court does not give instruction).
Lastly, in this regard, the general rules regarding entry of a mistrial by the trial court are stated in Wadsworth v. State,439 So.2d 790, 792 (Ala.Crim.App. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1716, 80 L.Ed.2d 188 (1984), where it is made abundantly clear that entry of a mistrial is within the sound discretion of the trial court upon the showing of a high degree of manifest necessity. The trial court's decision will not be interfered with on appeal, unless there is a clear abuse of discretion. Id. See also Woods v. State, 367 So.2d 982
(Ala. 1978). In the case at bar there has been absolutely no showing of manifest necessity by appellant. No attempt was made to determine the content of the jurors' discussion and the trial court was, therefore, well within the bounds of its discretion in denying appellant's motion for mistrial.
For the foregoing reasons this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.
 *Page 347