This appeal follows a conviction for the offense of bribery of a witness, in violation of § 13A-10-121(a)(1), Code ofAlabama (1975), and sentence of five years' imprisonment. For the reasons outlined below, the conviction is due to be affirmed.
On June 10, 1982, the appellant's son, Richard Maddox, was arrested, charged, and subsequently convicted of the offense of trafficking in marijuana. The State's case against Richard Maddox was based, in part, on the testimony of David Windsor, Deputy Sheriff.[1] Richard Maddox appealed his conviction and, while his case was pending on appeal, the acts which constitute the present offense took place.
During the appellant's trial, Deputy Sheriff David Windsor testified that, on four separate occasions, he was approached by the appellant and questioned about the testimony he gave at Richard Maddox's trial. The first conversation, according to Deputy Windsor, took place on the day of Richard Maddox's arraignment. According to Deputy Windsor, the appellant told him that he "needed to talk to somebody about getting some help for his son." Deputy Windsor testified that he instructed the appellant that he should talk to the district attorney or the sheriff because "I told him that he didn't need to talk to me."
The next conversation, according to Deputy Windsor, occurred on the last day of Richard Maddox's trial, after the jury had returned a guilty verdict. According to Deputy Windsor, the appellant came up to him and "extended his hand and shook hands and said he wanted to thank me for telling the truth." Deputy Windsor testified that the appellant wanted to know "how his son had been caught." Deputy Windsor explained to the appellant that "we didn't know who was going to be there," and the conversation ended.
On July 10, 1983, according to Deputy Windsor's testimony, he received a telephone call at his home from someone who stated that he wanted to sell some timber or pulpwood. Deputy Windsor testified that he initially thought that the caller had the wrong number, but then recognized the appellant's voice. Deputy Windsor explained that he told the caller to "hang on" because he had a "house full of company" and needed to change phones. Deputy *Page 145 
Windsor stated that he went to the telephone in the bedroom and turned on a small cassette tape recorder before he resumed his conversation.[2] During the course of the telephone conversation, Deputy Windsor and the appellant agreed to meet at a prearranged place on Tuesday, July 12, 1983.[3]
Deputy Windsor explained that he had been told that the appellant might try to contact him and was cooperating with the Sheriff's Department in its investigation of the appellant. As a result of the investigation, Deputy Windsor was fitted with a "small transmitting device" so that he could simultaneously record and transmit any conversations which he might have with the appellant. Windsor testified that he met the appellant at the prearranged time and location, and together they drove to the Marble Valley Cemetery. At the cemetery, according to Windsor's testimony, two other police officers, Jimmy Abbott and Bob O'Conner, were stationed so that they could observe the meeting from a secluded position. Windsor testified that when they arrived at the cemetery, he and the appellant got out of the car, walked around to the rear of the car, and began to talk.[4]
Windsor testified that, approximately three-quarters of the way through the conversation, the appellant took out a scrap piece of paper and wrote "Can you say anything that will help?" After talking for a little while longer, the appellant wrote "$5,000" on the paper and then underneath wrote "+ $5,000." At the bottom of the scrap of paper, the appellant wrote: "Did you go inside of [the] building?" According to Deputy Windsor, the appellant pointed first to the "$5,000" figure; then he pointed to the question, "Did you go inside the building?" and then the appellant pointed to the figure "+ $5,000."
Windsor testified that the conversation lasted approximately eighteen minutes. At the beginning of the conversation, the appellant referred to the possibility of selling some timber and pulpwood to Windsor. Deputy Windsor interrupted the discussion concerning timber and asked: "[Y]ou didn't call me to sell me no timber, now what can I do?" The appellant replied, "I thought you were aware of the situation and you wanted to handle the situation like it should be handled." The appellant then explained to Deputy Windsor that he thought a "few lies" were told at the Richard Maddox trial and that "if the truth were told, it would help the situation." When Deputy Windsor informed the appellant that he had already told the truth at trial, the appellant replied, "Well, was that the truth?" The appellant told Windsor that it was his "understanding" that the search of the greenhouse would have been illegal if Windsor had testified that he had gone inside the greenhouse before he obtained the search warrant. Windsor reiterated *Page 146 
that his trial testimony was to the contrary and asked the appellant what he wanted him to do. The appellant replied, "Well, I thought that was understood. I don't want to get caught in no trap."
At this point the conversation ended, and, according to Windsor, as they started to leave, Investigator Abbott and Bob O'Conner "came out of the woods and told us to get out of the car," and the following occurred:
 "[David Windsor]: Mr. Maddox was sitting in the passenger seat, and he reached in his pocket and grabbed the paper he had been writing on, grabbed it out of his pocket and tore it in half.
 "I lunged over in the seat and grabbed his hands. And at that time, when I grabbed his hands, Bob O'Conner opened the car door and was telling him to get out of the car. And as he was getting out of the car one hand came free from my grasp and he put half of the paper in his mouth. I got the other half out of his hand.
 "Q [State's attorney]: What, if anything, occurred concerning the half that he stuck in his mouth?
 "A As I got out of the car and went around the car I saw Jimmy Abbott get the other half of the paper out of Mr. Maddox's mouth.
 "Q What were the circumstances surrounding him getting that piece of paper out of his mouth? Could you describe where everybody was and what was happening during that sequence?
 "A Well, they had gotten Mr. Maddox out of the passenger side door of my car and, like I said, I had half of the paper in my hand.
 "I got out and went around the car. And as I went around the car Jimmy Abbott removed the paper from Mr. Maddox's — the other half of the paper — from Mr. Maddox's mouth and then patted him down to see if he had any weapons on him."
Deputy Windsor identified the two scraps of paper. According to Deputy Windsor, one of the scraps was the piece of paper which he retrieved from the appellant's hand and the other piece was identified as the "other half of the paper that Investigator Abbott removed from Mr. Maddox's mouth."
 I
The appellant was convicted of the offense of bribery of a witness, in violation of § 13A-10-121(a)(1), Code of Alabama
(1975), which provides as follows:
 "A person commits the crime of bribing a witness if he offers, confers or agrees to confer anything of value upon a witness or a person he believes will be called as a witness in any official proceeding with intent to corruptly influence the testimony of that person."
According to the appellant, the State did not prove that he intended to "corruptly influence" Deputy Windsor's testimony and also did not prove that Deputy Windsor was a "witness." For the reasons discussed below, neither of these contentions has merit.
 (a)
The appellant argues that the State did not prove that he intended to "corruptly influence" the testimony of Deputy Windsor because the evidence merely showed that he wanted Windsor to "re-examine and reconsider his [earlier] trial statements" and simply "tell the truth." In support of his position, the appellant cites certain federal court cases and cases from other jurisdictions. In response, the State citesEx parte Montgomery, 244 Ala. 91, 12 So.2d 314 (1943).
Although Ex parte Montgomery, supra, involves a disbarment proceeding and not a criminal prosecution, the case contains language which is pertinent to an analysis of the facts as presented in the instant case.[5] *Page 147 
The appellant in Ex parte Montgomery argued that his actions did not constitute the offense of bribery because, he argued, he
 "only participated [in the activity] in an effort to induce the sheriff to perform a legal duty which he should have done without compensation; that bribery contemplates a corrupt act in that respect; that it is not corrupt to pay a sheriff to perform a legal duty which he refused to do without compensation, though the sheriff may be corrupt in so demanding." 244 Ala. at 96, 12 So.2d at 317.
The Alabama Supreme Court in Ex parte Montgomery first noted that "corruption is an element of the offense [of bribery]," but then reasoned that if the sheriff's act of receiving the compensation was corrupt, then the appellant's act of giving the compensation "must also be treated as corrupt." Id. The court in Ex parte Montgomery then stated as follows:
 "A public officer is guilty of bribery if he accepts compensation for doing an act which is no more than he was legally bound to do. [Citations omitted].
 "We do not wish to say that the sheriff in fact acted corruptly. He is not here on trial. But the testimony of the petitioner is to the effect that he was corrupt, and that petitioner was a party to it. So that it is only insofar as petitioner is concerned that we will treat the conduct of the sheriff as corrupt. [The petitioner's] testimony [before the grand jury] was given apparently to impeach Smith as sheriff. While the testimony of petitioner in this proceeding conflicted with that before the grand jury in some respects, yet both versions of the transaction were to the effect that petitioner was a willing vehicle by which money was carried to the sheriff and paid to him in person or used in paying a debt of the sheriff on which this petitioner was an indorser, and that this was done to influence him in the performance of an official duty, made bribery by the Code sections. . . ." Id. 244 Ala. at 96, 12 So.2d at 317-318. [Emphasis added.]
Under Montgomery, if the appellant in the instant case offered to pay Windsor to "tell the truth," with the intent to completely influence Windsor's testimony, then the appellant would be guilty of the offense of bribery.
However, even if the language in Ex parte Montgomery, were held inapplicable to the case sub judice, it is apparent that the State presented overwhelming circumstantial evidence to prove that the appellant committed the offense. " 'The evil of the offense [of bribery] is its tendency to pervert the administration of justice, by tempting jurors to act contrary to the known rules of honesty and integrity.' " Hammond v.State, 354 So.2d 280, 289 (Ala.Cr.App.), cert. quashed,354 So.2d 294 (Ala. 1977), cert. denied, Hammond v. Alabama,439 U.S. 823, 99 S.Ct. 91, 58 L.Ed.2d 115 (1978), quoting Caruthersv. State, 74 Ala. 406 (1883).[6] In a bribery case which involved a trial court judge's solicitation of sexual favors in exchange for favorable treatment on pending court cases, this court noted that "the gravamen of the offense is the acceptance and solicitation of the bribe to influence [the judge's] official conduct." (Citation omitted.) McDonald v. State, 57 Ala. App. 529,537, 329 So.2d 583, 588 (Ala.Cr.App. 1975), cert. quashed,295 Ala. 410, 329 So.2d 596 (Ala. 1976), cert. denied,429 U.S. 834 (1976). In upholding the appellant's conviction inMcDonald, this court stated as follows:
 "Where there is legal evidence, as in this case, from which the jury can by fair inference find the accused guilty, this court has no right to disturb the verdict." *Page 148 Id. 57 Ala. App. 529 at 544, 329 So.2d 583 at 595. (Citation omitted.)
A "material element" of the crime of bribery is the defendant's corrupt "intent" at the time of the offense.Roden v. State, 5 Ala. App. 247, 254, 59 So. 751 (1912), quotedin Pope v. State, 365 So.2d 369, 372-73 (Ala.Cr.App. 1978). Although the evidence presented in the case sub judice was circumstantial, the State proved that the appellant's "intent" at the time he offered the money to Deputy Windsor was to "corruptly influence" Windsor's testimony. As this court has noted, proof of the appellant's "intent" can be inferred from all of the surrounding circumstances. Paige v. State,494 So.2d 795 (Ala.Cr.App. 1986).
The evidence presented by the State in the instant case established that, on more than one occasion, the appellant approached Deputy Windsor and attempted to convince Windsor that he should change his previous trial testimony and, in effect, perjure himself. "It is largely a question of fact, rather than a question of law, for the determination of the jury, whether particular conduct, or particular expressions of the accused, refer to a criminal offense, and spring from his consciousness of guilt." Pope v. State, 365 So.2d 369, 374
(Ala.Cr.App. 1978). The appellant's actions and statements clearly show that he offered money to Deputy Windsor, a potential witness, with the intent to "corruptly influence" Windsor's testimony. In the instant case, the evidence presented a question of fact which was resolved by the jury adversely to the appellant.
In addition to the appellant's actions and statements prior to his arrest, his actions when he realized that he was being apprehended point to his guilt. According to Windsor's testimony, the appellant attempted to swallow the incriminating handwritten note when he realized that he was under arrest. " 'Any act proving or tending to prove an effort or desire on the part of the defendant to obliterate evidence of a crime is relevant, for from such fact, if unexplained, the jury may justly infer consciousness of guilt.' " Robinson v. State,43 Ala. App. 111, 116, 180 So.2d 282, 287 (1965), quoted inMottenon v. State, 346 So.2d 18, 21 (Ala.Cr.App. 1977). "An effort to suppress evidence by an accused is evidence of guilt and is admissible even if it involves evidence of a separate offense." Watwood v. State, 389 So.2d 549, 551 (Ala.Cr.App.),cert. denied, 389 So.2d 552 (Ala. 1980), citing Staggs v.State, 51 Ala. App. 203, 283 So.2d 652 (1973). See also: Beaverv. State, 455 So.2d 253, 257 (Ala.Cr.App. 1984) (testimony that accused was observed at the police station throwing the stolen car keys into a trash can held admissible, as tending to prove defendant's desire to "obliterate, destroy or suppress evidence of a crime").
" 'Where there is legal evidence from which the jury can by fair inference find the defendant guilty, the Court of Criminal Appeals has no right to disturb the verdict; whether there is such evidence is a question of law, its weight and probative value are for the jury.' " Grace v. State, 445 So.2d 976, 978
(Ala.Cr.App. 1983), quoting Allen v. State, 382 So.2d 11, 24
(Ala.Cr.App.), cert. denied, 382 So.2d 25 (Ala. 1980), cert.denied, Allen v. Alabama, 449 U.S. 843, 101 S.Ct. 125,66 L.Ed.2d 52 (1980). In the case sub judice, there was overwhelming evidence, albeit circumstantial, which supports the finding of the appellant's guilt, and this court will not disturb that jury verdict.
 (b)
The appellant additionally argues that he could not be convicted of the offense of bribery of a "witness" because Deputy Windsor was not a "witness" at the time of the July 12 conversation. Because Richard Maddox's trial was complete and Deputy Windsor had already testified, the appellant argues that Windsor was not a "witness." According to the appellant there was "no proceeding pending in the court regarding [the] facts and issues related to the matters discussed by Windsor and [the appellant] on July 12." Contrary to the appellant's position, however, § 13A-10-121(a)(1), Code of Ala. (1975), specifically prohibits the offering of a thing *Page 149 
of value to a "witness" or "a person" that the actor believes will be "called as a witness in any official proceeding" with the intent to corruptly influence the testimony of that person.
In the case sub judice, Deputy Windsor was a "witness" for purposes of § 13A-10-121(a)(1). At the time of the July 12 conversation, Richard Maddox's conviction was pending on appeal and his co-defendants' trials were scheduled for the next week. At the time the appellant met with Windsor, the appellant believed that Windsor would be called as a witness in an "official proceeding." The fact that the two co-defendants, Gary Gillum and Vicky Callahan, subsequently pleaded guilty and never went to trial would not affect the fact that Windsor was a prospective "witness" at the time of the conversations.
 II
The appellant argues that the trial court improperly denied his request for a mistrial based on juror misconduct. Both the State and the defense prepared transcripts of the tape-recorded conversation of July 12, 1983, and the State also prepared a transcript of the telephone conversation of July 10, 1983. Although the transcripts were not admitted into evidence, copies were provided to the jurors to assist them in their understanding of the conversations as the tapes were played in open court. On the second day of the appellant's trial, defense counsel made the following argument, outside the presence of the jury:
 "I didn't realize it yesterday, but the jury left here, some of the members of the jury left here, with transcripts which had been shown to them. They took them home, as a matter of fact.
 "I gathered up whatever was available over there after they left yesterday and gave them to the court reporter.
 "I would ask for a mistrial on the basis that they took things home and considered them, or whatever they did with them, I don't know.
 "I know the fellow up there this morning in the blue jacket, he has his transcripts. And other members — we didn't collect them out — and other members of the jury must have transcripts, because we didn't collect enough to account for all that would have been there.
 "I didn't realize until after the court had already adjourned yesterday that this had happened, and I think that that is improper. And I ask for a mistrial on that basis."
The trial court overruled the motion for a mistrial.
The appellant argues that the denial of his motion for a mistrial was improper. According to the appellant, the fact that the jurors took the transcripts home with them after the first day of trial constitutes "juror misconduct" whichmight have influenced the jury verdict, and thus he is entitled to a new trial. Additionally, the appellant argues that the trial court committed reversible error because it "failed to instruct the jury that the transcripts were not the evidence, and that the tapes and testimony were the only evidence to be considered by them during their deliberations." In support of his position, the appellant cites O'Berry v. State,361 So.2d 1132 (Ala.Cr.App.), cert. denied, 361 So.2d 1135 (Ala. 1978).[7]
In O'Berry v. State, supra, the docket sheet and court file were taken into the jury room during the deliberations. After the jurors were questioned by the trial court, it was determined that the court file was not inspected by the members of the jury until after the voting was complete and a unanimous verdict had been reached. In concluding that the denial of the request *Page 150 
for a mistrial was proper, this court in O'Berry reasoned as follows:
 "Generally in a criminal case the jury should not consider evidence outside that produced at trial, or take out and consult records, documents, or other material not submitted as evidence on the trial and which may influence their verdict. [Citation omitted.] Each case of alleged improper conduct of jurors during trial and deliberation must be judged by its peculiar facts. [Citation omitted.] The test is not whether the conduct did influence the jury but whether it might have. [Citations omitted.]
 "The appellant argues that since the extrajudicial documents might have influenced the jury the trial court should have granted his request for mistrial. He contends that a juror could have changed his vote had it not been for the allegedly prejudicial documents which had the effect of cementing the juror's position. Under the facts of this case such argument rises to a level of impermissible speculation and conjecture. The undisputed facts are that the deliberations had been completed and a unanimous verdict reached before any juror examined the documents. This is not the case where a juror testifies that extrajudicial evidence examined during deliberation and before a verdict was reached did not influence that verdict. Though the influence was improper the jurors were not aware of its existence until after all voting had been completed, a unanimous verdict reached, and they were waiting to return to the courtroom to announce their decision. Under these circumstances the denial of the request for mistrial was proper." Id. at 1133-34. [Emphasis in original.]
Where juror misconduct is alleged, the proper test to be applied is not " 'whether the defendant was prejudiced, but whether he might have been.' " Neelley v. State, 494 So.2d 669
(Ala.Cr.App. 1985), quoting Ex parte O'Leary, 438 So.2d 1372,1374 (Ala. 1983). Here, as in Neelley, the trial court applied the correct test and the record supports the findings that a mistrial should not be declared.
Additionally, " 'A motion for mistrial should not be granted where the prejudicial qualities of the comment can be eradicated by action of the trial court.' " Henry v. State,468 So.2d 896, 901 (Ala.Cr.App. 1984), cert. denied, Ex parteHenry, 468 So.2d 902 (Ala. 1985), quoting Nix v. State,370 So.2d 1115, 1117 (Ala.Cr.App.), cert. denied, 370 So.2d 1119
(Ala. 1979).[8] The appellant in the instant case waived any objection when he failed to pursue the matter further by requesting that the jury be given curative instructions. Reevesv. City of Montgomery, 466 So.2d 1041 (Ala.Cr.App. 1985).[9] As this court in Reeves stated:
 "[T]he general rules regarding entry of a mistrial by the trial court are stated in Wadsworth v. State, 439 So.2d 790, 792 (Ala.Cr.App. 1983), cert. denied, 466 U.S. 930, 104 S.Ct. 1716, 80 L.Ed.2d 188 (1984), where it is made abundantly clear that entry of a mistrial is within the sound discretion of the trial court upon the showing of a high degree of manifest necessity. The trial court's decision will not be interfered with on appeal, unless there is a clear abuse of discretion. Id. See also Woods v. State, 367 So.2d 982 (Ala. 1978). In the case at bar there has *Page 151 
been absolutely no showing of manifest necessity by appellant. No attempt was made to determine the content of the jurors' discussion and the trial court was, therefore, well within the bounds of its discretion in denying appellant's motion for mistrial." Id. at 1045.
Here as in Reeves, there was no attempt to determine the extent of the jurors' consideration of the transcript, and the appellant did not request that curative instructions be given to the jury. Thus, there was no abuse of discretion in the trial court's denial of the motion for mistrial. Gary v. State,473 So.2d 604, 606 (Ala.Cr.App. 1985).
In the instant case, the trial court specifically instructed the jury that it was their "duty to take the evidence that has been allowed in the case and disregard anything that has been excluded." Although this remark did not make specific reference to the transcripts, it is clear that the burden was on defense counsel to bring any possible omissions in the charge to the attention of the trial court. Instead, at the close of the trial court's jury charge, defense counsel affirmatively stated that he was "satisfied" with the instructions.
In a recent case, this court, per Judge Tyson, concluded that the trial court did not abuse its discretion when it denied a defense motion for mistrial because "a mistrial in this case would have been too harsh a result." Grimes v. State,491 So.2d 1053 (Ala.Cr.App. 1986). Instead, this court in Grimes
concluded that "defense [counsel] could have and should have asked for curative instructions." In reaching this conclusion, this court reasoned as follows:
 "The decision as to whether a mistrial should be granted is within the sound discretion of the trial court. Shadle v. State, 280 Ala. 379, 194 So.2d 538 (1967); Poole v. State, 430 So.2d 894
(Ala.Cr.App. 1983). The trial judge is in the best position to determine whether a mistrial should be declared because he is able to hear and observe what happens at trial.
 McMurphy v. State, 455 So.2d 924 (Ala.Cr.App. 1984).
 " 'A high degree of "manifest necessity" for granting of a mistrial must be demonstrated before a mistrial should be granted. [Citations omitted.] "The entry of a mistrial is not lightly to be undertaken. . . . [T]he entry should be only a last resort as in cases of otherwise ineradicable prejudice." [Citation omitted] (emphasis in original).'
 "Hunt v. State, 453 So.2d 1083, 1085-86
(Ala.Cr.App. 1984).
 " 'A motion for a mistrial implies a miscarriage of justice and should only be granted where it is clearly manifest that justice can not be afforded. It specifies such fundamental error in a trial as to vitiate the results. [Citation omitted.]'
"Young v. State, 416 So.2d 1109 (Ala.Cr.App. 1982).
 " 'A motion for mistrial does not serve the same function as a mere objection or motion to strike; neither does it include a motion to strike or exclude testimony as a lesser prayer for relief, [Citation omitted.]'
"Hunt, supra, at 1086.
 "Officer Mahaney's answers were not such that they were ineradicable from the minds of the jury. Any prejudice to the appellant as a result of Mahaney's answers could have been eradicated by curative instructions from the trial judge. Defense counsel's motion for a mistrial was not the proper way to eliminate the consideration of Mahaney's answers from the jury. Griffin v. State, 364 So.2d 428 (Ala.Cr.App. 1978)." Id.
In the case sub judice, defense counsel should have initially requested that the trial court determine whether any prejudicial or improper conduct had occurred.[10] If the trial court determined that prejudicial or improper conduct had occurred, then, at that time, rather than requesting a mistrial, defense counsel could have moved for curative instructions. In the present case, *Page 152 
the appellant cannot meritoriously argue that he was entitled to a mistrial. " 'The grant or denial of a mistrial is a matter within the sound discretion of the trial court and will only be disturbed upon a showing of manifest abuse.' " Baker v. State,477 So.2d 496, 502 (Ala.Cr.App. 1985), cert. denied Baker v.Alabama, 475 U.S. 1029, 106 S.Ct. 1231, 89 L.Ed.2d 340 (1986),quoting Roundtree v. State, 461 So.2d 31, 33(Ala.Cr.App. 1984). "The trial judge is in the best position to determine the effect of allegedly prejudicial questions since he is able to observe and hear what transpires during the course of the trial." Williams v. State, 487 So.2d 268 (Ala.Cr.App. 1986),citing Benford v. State, 435 So.2d 1327 (Ala.Cr.App. 1981). Here, as in Williams and Baker, we find no abuse of discretion in the trial court's denial of the motion for a mistrial.
 III
The appellant also argues that his motion for a new trial should have been granted, based on juror misconduct during the deliberations. According to the appellant, "the jury improperly considered documents during deliberations which were given to it solely as an aid to understanding, and were not evidence." At the hearing on the motion for new trial, certain members of the jury testified that they had copies of the transcripts of the tape-recorded conversations in the jury room during the deliberations. Appellant argues that he is entitled to a new trial because: (1) the transcripts unduly emphasized the evidence against the appellant; (2) the transcripts constituted improper "hearsay"; and (3) the court did not instruct the jury that, if there was any conflict between the transcripts and their memory, that they should rely on their memory.[11]
This case can be distinguished from Ex parte Troha,462 So.2d 953 (Ala. 1984), cited by the appellant.[12]
In Ex parte Troha, the appellant's conviction for first degree rape was reversed and the case remanded, based on juror misconduct, and the following rule from Roan v. State,225 Ala. 428, 435, 143 So. 454, 460
(1932), was quoted:
 " 'The test of vitiating influence is not that it did influence a member of the jury to act without the evidence but that it might have unlawfully influenced that juror and others with whom he deliberated, and might have unlawfully influenced its verdict rendered. [Emphasis added in Troha.]' " 462 So.2d at 954.
At the hearing on the motion for a new trial in the present case, seven of the jurors testified. All of the jurors who testified stated that the transcripts which they had in their possession had been given to them by defense counsel as an aid to their deliberations. After a full evidentiary hearing on the merits of the appellant's motion for a new trial, the trial court entered an extensive order overruling the motion. Briefly outlined, the following specific findings were set out in the trial court's order:
 1. There were two "versions" of the tape-recorded conversation of July 12, 1983. The State prepared one of the transcripts and the other was prepared by the defense.
 2. Although the transcripts "varied in some minute details," the substance of the transcripts was the same.
 3. By agreement of the parties, a copy of both transcripts was provided to the *Page 153 
jurors for their "convenience and benefit" to assist them while they listened to the tape recording.
 4. Although the transcripts were neither offered nor received into evidence, the jury "had free access to the transcripts and were allowed to read them."
 5. After the first day of trial, the proceedings were recessed and the jurors went home. At that time, however, "it was not called to the court's attention, nor requested of the court, that the transcripts be taken from the jurors."
 6. The fact that some of the jurors might have taken the transcripts home with them was not called to the court's attention until after a recess had been called and "after the jurors had left the premises, making it impossible for the court to retrieve the transcripts."
 7. The next day, defense counsel moved for a mistrial and alleged, as the basis for his motion, that some of the jurors had taken the transcripts home with them.
 8. At the time the motion for mistrial was made, defense counsel made no "offer of proof" and, additionally, defense counsel made no request that "the court examine any or all the jurors to determine what possible prejudice, if any, had resulted from the alleged or assumed conduct of the jurors in regard to the transcripts."
 9. Again, although defense counsel was obviously aware that the jurors had copies of the transcripts, there was no "request at that time that the transcripts be collected from the jurors."
 10. When the jury retired for its deliberations, the trial court specifically "requested that the exhibits be checked before sending them to the jury."
 11. Prior to the time that the jury retired, "again, there was no request of the court to determine if any of the jurors still had any transcripts."
 12. Additionally, before the jury retired, there was no request that the trial court take the transcripts away from the jurors before they retired, in the event that they still had the transcripts.
These findings of fact were based on the trial court's intimate knowledge of the proceedings of this case, and great deference will be afforded these factual conclusions. Based on the testimony presented at the motion for a new trial, the court also concluded that the evidence was "totally inconclusive" and that the defendant failed to establish that the transcripts played "any part in the jurors' deliberations and ultimate verdict." The court also specifically found that there was no prejudice to the defendant as a result of any of the alleged "improper jury conduct."
In a case which is similar to the facts of this case, this court concluded that the alleged juror misconduct did not constitute "reversible error." Merriweather v. State,364 So.2d 374 (Ala.Cr.App.), cert. denied, Ex parte Merriweather,364 So.2d 377 (Ala. 1978). In Merriweather, a diagram of the scene of the crime (which had not been admitted into evidence during the course of the trial), was present in the jury room during the deliberations. On the back of the diagram, there was another drawing of a totally different robbery scene. At a hearing on the defense motion for a mistrial, all of the jurors testified that they did not look at the back of the diagram during the course of their deliberations. Based on the juror's testimony, this court agreed with the trial court's finding that the extraneous matter on the back of the diagram could not have "influenced the jury in reaching their verdict." Id.
at 377.
Because the jurors in Merriweather testified that they referred to the diagram on the front of the exhibit, this court considered "whether such [extraneous] matter might have influenced the jury in reaching their verdict." Id., quotingGilliland v. State, 266 Ala. 24, 93 So.2d 745 (1957). After due consideration, this court in Merriweather concluded that "no harm to defendant could have resulted from the apparently inadvertent mistake of someone's allowing the diagram to go with the jury to the jury room." Like the diagram in theMerriweather case, the transcripts in the case sub judice had been used throughout the trial of the case, at the request of the *Page 154 
defense; the transcripts were in the open "view of the jury" throughout the entire trial of the case; both the witnesses and counsel made repeated references to the transcripts during the trial; and there was no information in the transcripts which had not been "emphatically" conveyed to the jury during the trial of the case. In the present case, as inMerriweather, the transcripts were taken to the jury room in what would appear to be an "inadvertent mistake," and there was no prejudice to the appellant as a result.
Defense counsel was aware that the jurors had copies of the transcript prior to the time they retired to deliberate. Defense counsel, along with others, was responsible for making sure that the proper physical evidence went to the jury.Lowman v. State, 400 So.2d 430, 433 (Ala.Cr.App.), cert.denied, 400 So.2d 434 (Ala. 1981). As noted in the trial court's order, the trial court specifically requested that the "exhibits be checked before sending them to the jury." As this court has noted in the past, "where defense counsel has knowledge of an error, he may not remain silent and gamble on a favorable verdict and then raise the matter in a motion for new trial when the verdict turns out unfavorable to the defendant."Duncan v. State, 369 So.2d 885, 888 (Ala.Cr.App. 1979). In such a case, the "calculated silence of the appellant and his counsel amounts to a waiver." Id. Additionally, there were no "new facts" introduced to the jury as a result of the jurors' access to the transcripts; thus, there was no "wrongful influence" on the jury as a result. Bolt v. State,428 So.2d 1369 (Ala.Cr.App. 1982), cert. denied, Ex parte Bolt,428 So.2d 1371 (Ala. 1983).
If defense counsel deliberately allowed the transcripts to remain in the jury room, after he was aware of their presence, then the application of the doctrine of "invited error" would be appropriate. " 'A defendant cannot by his own voluntary conduct invite error and then seek to profit thereby.' "Neelley v. State, 469 So.2d 702, 705 (Ala.Cr.App. 1985),quoting Murrell v. State, 377 So.2d 1102, 1105 (Ala.Cr.App.),cert. denied, 377 So.2d 1108 (Ala. 1979). As this court stated in Merriweather, supra, 364 So.2d at 377:
 "A determination of what documents or other material should go to the jury room for consideration by the jury during deliberations is the responsibility of the trial judge, but the attorneys for the parties, the court reporter, the acting clerk and the bailiff, in degrees varying with the circumstances, share responsibility for bringing to the attention of the trial court any question as to whether particular documents or other material should go to the jury room. We do not find any blameworthy conduct on the part of any particular person in connection with the taking of the drawing to the jury room, but when the one complaining is no less responsible therefor than others, his complaint is not ordinarily well taken." [Citation omitted.] [Emphasis added.]
Whether or not a motion for new trial should be granted is a matter within the discretion of the trial court. Davis v.State, 457 So.2d 992, 994 (Ala.Cr.App. 1984). " '[A] [d]ecision on [a] motion for a new trial rests largely within the sound discretion of the trial court and, in reviewing that decision, the Court of Criminal Appeals will indulge every presumption in favor of the correctness thereof.' " [Citation omitted.] Gracev. State, 445 So.2d 976, 978 (Ala.Cr.App. 1983), quoting Allenv. State, 382 So.2d 11, 24 (Ala.Cr.App. 1979), cert. denied,382 So.2d 25 (Ala.), cert. denied, Allen v. Alabama,449 U.S. 843, 101 S.Ct. 125, 66 L.Ed.2d 52 (1980). After a hearing on the motion for a new trial, the trial court in the instant case determined that the appellant's allegations were without merit, and we agree. "Our review of the record on this point does not indicate that the events complained of by appellant had any bearing on his trial." Scanland v. State, 473 So.2d 1182, 1187
(Ala.Cr.App. 1985), cert. denied, Scanland v. Alabama,474 U.S. 1035, 106 S.Ct. 602, 88 L.Ed.2d 581 (1985). Even though the transcripts were not admitted into evidence, the fact that they were used in connection with the giving of testimony in the case made the transcripts "evidence *Page 155 
in the case and proper to go before the jury in its deliberations." Jolly v. State, 405 So.2d 76, 77 (Ala.Cr.App. 1981) (citations omitted). Thus, the trial court's determination that the motion for a new trial should be denied was in all respects proper.
AFFIRMED.
All the Judges concur.
[1] On July 11, 1985, this court, per Judge Patterson, affirmed the conviction of Richard Maddox for the offense of trafficking in cannabis, in violation of the Alabama Uniform Controlled Substances Act. The decision reached by this court also affirmed, at the same time, the convictions of Richard Maddox's co-defenants, Vickie Callahan and Gary Gillum. Gillum was also convicted of the offense of trafficking in cannabis, while Callahan was convicted of the offense of possesion of marijuana. Both Callahan and Gillum entered guilty pleas to the charges but negotiated a supplemental plea bargain agreement with the State which allowed them to appeal the legality of the search and consolidate their appeals with that of Richard Maddox.
The issue raised by the consolidated appeals concerned the legality of the search and seizure of evidence which led to the convictions. The chief witness for the State concerning this issue was Officer David Windsor. Based on certain observations that Officer Windsor made, a search warrant was obtained. This court concluded that Officer Windsor's observations and search were proper and that the evidence seized was properly admitted into evidence.
[2] At this point in Windsor's testimony, State's exhibits one and two were marked for identification. State's exhibit number two was the cassette tape which was used to record the conversation of July 10, 1983, between Deputy Windsor and the appellant. State's exhibit number one was a transcript of the taped conversation. Before the tape recording was played for the jury, copies of State's exhibit number one were provided to the members of the jury, as well as the court reporter, pursuant to a stipulation with the defense attorney that copies of the transcript could be used. Although State's exhibit number two, the cassette tape, was formally entered into evidence, the transcript of the tape was not admitted into evidence.
[3] Although Richard Maddox had been convicted of the offense of trafficking in marijuana prior to July of 1983, his case was pending on appeal. Deputy Windsor was also scheduled to testify in the trial of Richard's co-defendants, Gary Gillum and Vickie Callahan. Gillum and Callahan both pleaded guilty in November of 1983 to separate charges of felony possession and trafficking.
[4] This conversation was recorded on a cassette tape, which was marked as State's exhibit number three and which was admitted into evidence. A transcript of the conversation was marked as State's exhibit number four, and were labeled "conversation between Walter Maddox and David Windsor July 12, 1983." The transcript was not admitted into evidence. The tape was played outside of the presence of the jury, and defense counsel submitted a different version of the transcript, which he felt was more "accurate." At the request of the parties, the trial court allowed the jurors to consider both transcripts while the tape recording was played to the jury.
[5] In a quasi-criminal proceeding, the Alabama Supreme Court inEx parte Montgomery, 244 Ala. 91, 12 So.2d 314 (1943), considered a decision by the Board of Commissioners of the Alabama State Bar suspending the appellant from the practice of law. Prior to the suspension proceedings, the appellant had testified before the Jefferson County grand jury in an investigation of Harry E. Smith, the Sheriff of Jefferson County. Evidently, the appellant gave money to Sheriff Smith's campaign with the understanding that Smith would let him appoint an influential deputy after the election. The appellant's testimony before the grand jury was used against him in the subsequent procedings before the Board of Commisioners of the Alabama State Bar to prove that he was not a fit candidate for the practice of law.
[6] In Hammond v. State, the court considered whether the appellant had received a "thing of value." The Hammond decision also considered whether the appellant, as the president of the Public Service Commission, could be considered an "executive, legislative, or judicial officer" within the meaning of the bribery statute.
[7] Actually, the appellant cites the cast of Ex parte Troha,462 So.2d 953 (1984), in support of his position that the denial of the request for a mistrial was improper. Because Ex parte Troha
deals with the denial of a motion for a new trial, a discussion of the application of Troha to the facts of the case is set out in Issue III. Because O'Berry v. State, 361 So.2d 1132
(Ala.Cr.App.), cert. denied, 361 So.2d 1135 (Ala. 1979) deals with a denial of a request for a mistrial, a discussion of its application to the facts is included in Issue II, even though the appellant cited it as authority for Issue III.
[8] In Henry v. State, the alleged prejudice occurred as the result of a statement made by the State's attorney. After the defense counsel requested a mistrial, which was denied, defense counsel acquiesced in the trial court's decision not to give the jury curative instructions concerning the allegedly improper remark because it could "further compound the problem." 468 So.2d at 901.
[9] In Reeves v. City of Montgomery, defense counsel overheard two jurors discussing the D.U.I. trial and understood their remarks to indicate that they thought the appellant had a prior D.U.I. conviction. When the defense counsel brought this to the trial court's attention, the trial court offered to call the jury back into the courtroom and instruct them that they should consider only the evidence presented in the instant case. Defense counsel declined, however, and stated that he thought the "instruction would do more harm than good." The defense motion for a mistrial, based on the unsubstantiated conversation, was denied.
[10] At the hearing on the motion for new trial, testimony was presented which affirmatively showed that there was no prejudicial or improper conduct on the part of any of the jurors. Thus, the denial of the motion for a mistrial was in all respects proper.
[11] As noted in the discussion of Issue II, defense counsel did not request any specific instructions regarding the transcripts and stated that he was "satisfied" with the instructions given to the jury. Additionally, in charging the jury, the trial court informed the jury that it was their "duty to take the evidence that has been allowed in the case and disregard anything that has been excluded."
[12] After the trial of the case in Ex parte Troha, 462 So.2d 953
(Ala. 1984), one of the jurors submitted an affidavit which showed that he had called his brother, a minister, on the night of trial and discussed the case with him. The juror also stated that he asked his brother for "guidance and scripture references so as to enable me to make a proper and just decision." Id. The Alabama Supreme Court noted that even this "ambiguous evidence" supported the "light burden" established by Roan v. State, 225 Ala. 428, 435, 143 So.2d 454, 460 (1982). In the instant case, however, unlike Troha, there was no showing that the alleged misconduct "might have unlawfully influenced" the jury's decision. In fact, the evidence presented at the hearing on the motion for a new trial was to the contrary.